LARKIN SMITH, by his next friend, v. CHARLES H. SMITH.

*Appeal—Assignment of Error—Presumption—Insanity—Evidence—" Next Friend"—Costs—Parties.*

1. Error in the charge to the jury may be assigned for first time in appellant's statement of case on appeal.

2. The presumption that every person is sane is not so far rebutted by the fact that the Clerk of the Court had, in a preliminary proceeding, appointed a next friend to represent the alleged insane person in the pending action as to change the burden of proof. (MERRIMON, C. J., dissenting.)

3. The law attaches peculiar importance to the testimony of subscribing witnesses and family physicians.

4. While the "next friend" is not, strictly speaking, a party to the action, and generally will not be taxed with costs, yet where the Court finds the fact that he officiously procured his appointment, or was guilty of mismanagement or bad faith, it may tax him with costs.

This was a CIVIL ACTION, tried before *Boykin, J.*, at October Term, 1890, WAKE Superior Court.

The action was brought in the name of Larkin Smith, by his next friends, A. L. Ferrell and others, appointed by the Court. The purpose of the action was to set aside a prior power of attorney executed by Larkin Smith to the defendant Charles H. Smith, by reason of mental incapacity, and to have a receiver appointed for his estate. After the service of the summons on Charles H. Smith, to-wit, on February 26th, 1889, Larkin Smith executed a power of attorney to Messrs. Fuller & Snow and Batchelor & Devereux, attorneys, empowering and directing them to dismiss the said action.

When the case was called for trial, the attorneys for Larkin Smith read their power of attorney to the Court, and moved to dismiss the action.

The next friends of Larkin Smith resisted the motion, on the ground that when the power of attorney was executed, to wit, on the 26th day of February, 1889, he was incompetent mentally to execute the said power of attorney.

The Court adjudged that the rights of the parties would be better subserved, and the cause more intelligently and fairly tried, by submitting to the jury at this time the sole issue, which is set out in the record, and, in its discretion, submitted this issue alone:

" Was Larkin Smith incompetent, by reason of mental incapacity, to execute a good and valid power of attorney on the 26th of February, 1889?"

To this there was no exception, nor was there any exception to evidence by the appellants.

Among other things, his Honor charged the jury that the question for them to determine was the mental condition of Larkin Smith on the 26th of February, 1889, and the evidence as to his mental condition, both before and after that time, was only admitted and to be considered by them for the purpose of determining what his mental condition was on that day.

This was not excepted to until appellants' case on appeal was served.

His Honor further charged that the law attaches peculiar importance to the testimony of a subscribing witness. "In this case, L. L. Doub, the only subscribing witness to the power of attorney in question, has testified, but you are to determine from his character, and his appearance on the stand, and his demeanor on the stand, what weight, if any, you will give to his evidence." (The defendant had introduced evidence tending to show that Doub was a man of good character.)

His Honor further charged that the law attaches peculiar importance to the testimony of the attending family physician. "He (Dr. Knight) has testified, as have also other medical experts on both sides, but you are to determine from their manner and appearance what weight, if any, you will give to their testimony."

The appellants excepted to this part of the charge.

His Honor further charged the jury, that the law presumes every man to be of sound mind, and the burden of proof was upon the plaintiffs to show the contrary, and this must be shown by a preponderance of the evidence.

To this the appellants excepted.

The residue of his Honor's charge was not excepted to and is therefore not set out. The jury found in response to the issue "No," and the Court rendered judgment dismissing the action and taxing the next friends with the costs, and they appealed.

*Messrs. A. Jones* and *J. H. Fleming,* for plaintiff.

*Messrs. J. B. Batchelor, John Devereux, Jr., T. C. Fuller* and *George H. Snow,* for defendants.

CLARK, J.: The exceptions to the charge were taken in time when set out in appellants' statement of case on appeal

(*Lowe* v. *Elliott*, 107 N. C., 718), though it is better practice and fairer both to appellee and appellant, to make such exceptions on a motion for a new trial, since if a slip has been made the Judge may perhaps correct it and save parties the costs and delay of an appeal. *McKinnon* v. *Morrison*, 104 N. C., 354.

We find no error in the charge in the particulars excepted to. There are many precedents to support it. It is true that, ordinarily, if insanity is found to exist, it is presumed to continue till the opposite is shown. *State* v. *Vann*, 82 N. C., 631. But here the main contention in the action being as to the mental capacity of Larkin Smith, the preliminary action of the Clerk in appointing next friends to conduct the proceeding is not such a finding as to change the burden of proof and prejudge the very question at issue

While there is no specific exception to the judgment, any error therein which is apparent upon the face of the record the Court will take notice of and correct. *Thornton* v. *Brady*, 100 N. C., 38. The next friends are not parties to the action. *Mason* v. *McCormick*, 75 N. C., 263; *George* v. *High*, 85 N. C., 113; *Tate* v. *Mott*, 96 N. C., 19. They are appointed by the Court to act for and represent the real party in interest. The verdict and judgment having settled that Larkin Smith was *compos mentis*, the order appointing next friends was properly set aside. He then could have continued the action as to so much of it as asked to set aside the prior power of attorney to defendant, or have discontinued it. He elected to do the latter. The costs of the proceedings instituted in his behalf, and by order of the Court, should, *prima facie*, be taxed against him. It is to be presumed that the order of the Court appointing next friends was made regularly, after due inquiry, and in the interest of Larkin Smith. He is the party plaintiff, in fact and in law, and appeared by next friends, who merely represented him, under the authority and appointment of the Court. *The Code*, § 180. It is

contended, however, that though not strictly parties to the action, the next friends in the case at Bar, in resisting the motion to discharge them, were in fact (as virtually found by the verdict of the jury) resisting the will of Larkin Smith, a person of full age and competent to appear for himself; that such next friends officiously and unnecessarily caused themselves to be appointed, and that they, and not Larkin Smith, should pay the costs incurred by their false clamor. There is some force in this suggestion. While "next friends" may not be embraced in the strict letter of *The Code*, § 535, they come within the purview of that section. It was held error to tax trustees of an express trust who are parties to an action with the costs unless the Court had adjudged that they were guilty of "mismanagement or bad faith in such action." *Smith* v. *King*, 107 N. C., 273. *A fortiori* it is error to tax "next friends" who are not parties without at least a similar finding. This is not alleged here in the answer nor found by the Court. Indeed, the presumption, by virtue of their appointment by the Court, is that they acted in good faith, and they cannot be liable to costs unless there is an express finding against them of the facts requisite to tax them with costs. An analagous rule obtains in criminal actions, as to which it is held that an order taxing a prosecutor with the costs is erroneous unless the Court finds the facts which would authorize such order, and that the absence of such finding from the judgment would be an error apparent on the face of the record which the Court would correct without assignment of error. *State* v. *Roberts*, 106 N. C., 662. It is further held in the same case, that it is, notwithstanding, still open to the Solicitor, when the case goes back for correction of the judgment, to move the Court below that it pass upon the facts, the Court not having found the facts either way so as to make its judgment a finality, but having simply omitted to find them.

108—24

We find no error, except in the judgment as to costs, which should not have been awarded against the next friends without a distinct finding by the Court " of mismanagement or bad faith" by them in the institution or conduct of the action. To the end that such fact may be passed upon by the Court below, and the costs awarded in accordance therewith, the cause is remanded. The judgment in all other respects is affirmed.

MERRIMON, C. J.—dissenting: This action was brought by the plaintiff Larkin Smith, *non compos mentis*, as alleged, appearing by his next friends named in the summons and the record, who were appointed by the Court as such, and directed, by the order appointing them, to bring the action to recover possession of certain property of the plaintiff in the possession of the defendant, to have a power of attorney executed to the latter by the plaintiff in respect to such property "delivered up and cancelled," and for relief specified and demanded pending the action, etc.

In the course of the action, counsel other than those who appeared for the plaintiff brought his action and conducted the same at the instance of the plaintiff, through his said next friends, appeared in Court and exhibited a power of attorney purporting to be executed by the plaintiff to them, empowering and authorizing them to dismiss the action, and they accordingly moved to dismiss the same. The said next friends resisted this motion upon "the ground that when the said power of attorney was executed, to-wit, on the 26th day of February, 1889, the said Larkin Smith (the plaintiff) was incompetent, mentally, to execute the said power of attorney."

The Court, before disposing of the motion to dismiss the action, at October Term, of 1890, submitted this issue to a jury: "Was Larkin Smith incompetent by reason of mental incapacity to execute a good and valid power of attorney on

the 26th of February, A. D. 1889?" The jury responded "No." To this course of procedure there was no objection.

It was admitted on the trial of this issue that the plaintiff had been paralyzed before the execution of the power of attorney in question, on the right side, which partly deprived him of speech and rendered him unable to walk. Numerous witnesses were examined on the trial. Among other instructions, the Court gave the jury the following: "His Honor further charged the jury that the law presumes every man to be of sound mind, and the burden of proof was upon the plaintiffs to show the contrary, and this must be shown by a preponderance of the evidence." To this the appellants excepted.

The Court granted the motion to dismiss the action, and gave judgment against the said next friends of the plaintiff in favor of the latter and the defendants for the costs of the action. Whereupon such next friends appealed to this Court. Granting that the Court properly instructed the jury "that the law presumes every man to be of sound mind," I am of opinion that it erroneously instructed them further in that connection that "the burden of proof was upon the plaintiffs (meaning the next friends of the plaintiff in this action, the present appellants) to show the contrary;" because, in this very action, the Court itself in the proper exercise of its authority for the *purposes of the action* had adjudged that the plaintiff was *non compos mentis*, had appointed such next friends to be such, and authorized them to bring the action, as it might do.

A lunatic, or person *non compos mentis*, may bring his action in a case like this, and the statute (*The Code*, § 180) provides that, in the absence of a guardian, he may appear by his next friend. This statutory provision is serious, and, in proper cases, must be observed in some orderly effective way. Summary application by petition or motion in writing, stating the material facts upon which such application is

founded, should be made to the Court to appoint such next friend substantially as suggested in *Morris* v. *Gentry*, 89 N. C., 248; and if, upon due inquiry, it shall appear that the person in whose behalf such application is made is *non compos mentis* and the suggested action ought to be brought, the Court will appoint a suitable next friend, with leave or direction to bring the action, which must be brought in such case in the name of and for the lunatic, and the same will be his action—not that of the next friend. He will appear by the next friend. The latter will employ counsel, manage and prosecute the action under the supervision and direction of the Court. The Court may, for cause, remove him and appoint another in his stead, and in case, in the course of the action, the lunatic shall become sane, he may be discharged altogether and the action left to the former's management and control. The next friend is not a party to the action. He is the mere agent of the plaintiff, appointed by the Court for the special purpose and duties assigned him. His name as next friend appears on the record, but not as that of a party. He is under the control of and amenable to the Court in the discharge of his duties. In possible cases he may be chargeable with costs, but not when he acts in good faith and with reasonable prudence and care, especially where the plaintiff can pay the costs. *The Code*, § 180; *Latham* v. *Wiswall*, 2 Ired. Eq., 294; *Brooks* v. *Brooks*, 3 Ired., 389; *Green* v. *Kornegay*, 4 Jones, 66; *Tate* v. *Mott*, 96 N. C., 19; *Smith* v. *Smith*, 106 N. C., 498. Such application should be made in good faith, and the next friend should be appointed not as of course, but only upon due inquiry by the Court, and for substantial cause shown. And a next friend will not be appointed if the lunatic shall have a general or testamentary guardian in this State. The statute expressly provides that he shall appear by such guardian if he shall have one, but if the latter should faithlessly refuse

to sue when he ought to do so, possibly in that case a next friend might be appointed.

In this case, application by petition was made to the Court to appoint a next friend. It was alleged in the petition that the plaintiff was *non compos mentis* and unable to take care of his property; that his large property was in possession of defendant, who was wasting and destroying the same, etc. The Court thereupon declared that it appeared that the plaintiff was "incompetent to defend his possessions from injury"; that it was necessary to bring suit," etc.; and appointed appellants to be the next friends of the plaintiff, and authorized them to bring the action. The order thus made was not a mere matter of form; it was important and significant, and was based upon a finding of the Court, for the purposes of the action at least, that the plaintiff was then *non compos mentis*. It was certainly, in effect, so adjudged.

At any time in the course of the action it was competent for the plaintiff, or some person in his behalf, upon affidavit, to suggest that he had become sane since the action begun, and acting upon such suggestion the Court might at once institute an inquiry into the state of plaintiff's mind and capacity to do business and manage his own affairs, as the same might come within the compass of the action. This inquiry should be made summarily, but seriously and carefully, in the action by the Court, and if it should be satisfied of the restoration of the plaintiff to sufficient mental capacity to have charge of the action, then it should discharge the next friend and leave him to prosecute the same, or dismiss it, as he might deem proper. Such inquiry should not be confined to the ascertainment of the plaintiff's mental state at a particular time, or to the time when he executed a power of attorney empowering and authorizing counsel to dismiss his action, but it should extend to his general mental capacity to do and manage his business affairs, and particularly at

the time of the hearing of the motion to discharge the next friend. He may have had a lucid interval at a particular time, and yet generally be *non compos mentis*. The order appointing the next friend should not be made if it appeared that the plaintiff was only on a particular occasion or for a brief while insane: still, on the other hand, the next friend should not be discharged because the plaintiff had occasional brief lucid intervals. The Court should be satisfied of the plaintiff's restored mental capacity to enable him to transact his business, or give reasonable directions concerning and about the same, at the time of the disposition of the motion to discharge the next friend.

The motion of counsel to dismiss the action was, in effect, a motion to discharge the next friend of the plaintiff and allow him to dismiss his action. It was competent to make such motion in a proper way, and the Court might entertain it, and itself inquire into the mental condition of the plaintiff as above pointed out. The inquiry should have been made by the Court. It was its province and duty to find the facts. The issue submitted to the jury was not raised by the pleadings or the motion. It had reference to the ascertainment of facts, not necessarily by the jury, but by the Court. The latter, *ex mero motu*, submitted the issue for the purpose of aiding it in ascertaining material facts necessary to enable it to dispose of the motion to dismiss the action pending before it. It was sole judge of the extent it would require the aid of the jury or the compass of the inquiry embraced by the issue. It may be, it seems, that the inquiry should have extended to the mental condition of the plaintiff from the time specified in the issue up to the time the latter was submitted, but no question in that respect was raised. As I have said, it was the province of the Court itself to ascertain the material facts, but it might require the aid of the jury. It was not, however, in such case at all bound by the jury's findings of fact. It was the duty of

the Court to find them, but it might adopt, as its own, the findings of fact by a jury upon an issue or issues submitted to it, the Court hearing and considering the evidence. It should be simply aided by the findings of the jury. Although the issue submitted did not embrace the whole scope of the inquiry before the Court, and the Court was not bound by the finding, still the issue and the finding were important. The Court may have regarded the finding as leading and controlling; indeed, it seems it did so accept and treat it. The instructions given the jury were, therefore, material and important, especially that in which the Court told them that "the burden of proof was upon the plaintiffs (the appellants) to show that the plaintiff was not of sound mind." This may have been, probably was, potent in inducing the jury to respond to the issue in the negative, as it did do.

Clearly, in my judgment, such burden was not on the appellants. The Court, in the inception of the action and in connection with it, had decided that the plaintiff was *non compos mentis*. When, afterwards, in its course, it was suggested to the Court that the plaintiff was *compos mentis*, was always so, or had become so, as might be done, surely the Court would not stultify itself by simply ignoring its own solemn decision in which it had before adjudged that the plaintiff was *non compos mentis*. That adjudication was presumed to be correct, well founded and effectual, until he or they who suggested the contrary should prove the sanity of the plaintiff; the burden was upon them and not upon the appellants to make such proof. The adjudication was pertinent and remained of full force until some person, in a proper way, should take upon himself the burden of showing that it had been improvidently made, or was incautious, or that the plaintiff had become sane. When it was ascertained that the plaintiff was *non compos mentis*, he was presumed to continue to be so until the contrary should be shown.

The motion in question raised an inquiry to be made by the Court, and a question to be decided by it in and about the action. It was not part of the purpose of the motion to declare the plaintiff a lunatic, to institute an inquisition of lunacy; it referred only to this action.

Strictly, there were no parties to the motion, and the Court could deal with persons only as they put themselves in relation with it, and insisted that it should be allowed or disallowed. When, in such case, persons so come before the Court in the action, they thereby submit themselves to its jurisdiction for proper and pertinent purposes, and if the Court should erroneously adjudge that one or some of them pay costs, or the like, an appeal would lie in favor of the complaining party, and hence this appeal may be entertained by this Court. I may add that while, in such a case, the Court might tax parties interfering with, and as to the *motion*, with the costs of the same, I cannot see upon what ground the Court gave judgment against the appellants for the costs of the *action*. They were not parties to the action; they were the next friends of the plaintiff, and the latter was entirely solvent and able to pay the costs chargeable against him; nor was it suggested, nor did it appear, that they were chargeable with neglect or bad faith in any respect. It may be that, in some possible view of such a case, the next friend might be taxed with and required to pay costs, but it seems to me that ordinarily, in cases like this, they are not so chargeable.

*Per Curiam.*                                        Remanded.