S. A. MORRIS and others v. S. H. GENTRY and others.

*Judgment, valid until impeached—Rights of third persons thereunder, if reversed—Party presumed to have notice of suit—Guardian and Ward, next friend, ad litem—Demurrer, practice in.*

1. Judgments of a court in a case properly constituted before it, and where it has jurisdiction of the parties and the subject matter of controversy, are deemed to be valid, and will be upheld until impeached by a direct proceeding for that purpose.

2. And although such judgments may afterwards be reversed, the rights of third persons honestly acquired thereunder will be protected ; but otherwise, where such persons have knowledge of any irregularity or fraud in procuring their rendition.

3. The law presumes that a party to an action has notice thereof and a knowledge of its nature, but the contrary may be shown in a proceeding to attack the judgment therein.

4. The interests of minors are under the care of the court, and to the end that the same may be protected in suits brought by or against them, the court should see that the *next friend* or guardian *ad litem* be appointed upon due consideration of an application in writing, and not upon a simple suggestion.

5. Demurrer was overruled in court below with leave to defendant to answer over, and to plaintiff to amend complaint; *Held,* that although the demurrer in this case was sustained on appeal, yet no final judgment will be entered here, but the cause will be remanded for further proceeding under the leave granted in the court below.

(*University* v. *Lassiter,* 83 N. C., 38; *Ivey* v. *McKinnon,* 84 N. C., 651; *Sutton* v. *Schonwald,* 86 N. C., 198; *Gilbert* v. *James,* 86 N. C., 244; *Ex-parte Dodd,* Phil. Eq., 67; *Rowland* v. *Thompson,* 73 N. C., 504; *George* v. *High,* 85 N. C., 113; *Foy* v. *Haughton,* 83 N. C., 467, cited and approved).

EJECTMENT tried at Spring Term, 1883, of STOKES Superior Court, before *Graves, J.*

The plaintiffs allege in their complaint, that at the time of the death of James Morris, their father, which took place in the year 1865, he was seized in fee of an undivided half of a large tract of land situate in the county of Stokes; that at the fall term, 1860, of the court of equity of said county, an *ex-parte* petition was filed, in which they, as the infants and only heirs-at-law of their deceased father, purported to sue in that behalf by their mother, Mary S. Morris, as their next friend, for the purpose of selling the land for partition; that the petition was filed and the proceedings had under and in pursuance thereof without their knowledge, consent or sanction, and that their mother had no knowledge thereof, and never consented to or sanctioned the same; that an order directing the sale of said land was made by the superior court of said county, in the exercise of the jurisdiction in this respect, then lately belonging to said court of equity, and after repeated efforts to sell said land, it was at last sold at the price of $469, one William H. Gentry, the father of the defendant of that name, being the bidder; that the commissioner who sold the land reported that it did not sell for a fair price, and that the land was, in fact, reasonably worth $2,500; that

notwithstanding the inadequacy of the price bid, and in the absence of any inquiry or evidence as to the value of the land or the necessity for a sale thereof, the court at fall term, 1873, made a decree confirming the sale, and directing title to be made to the purchaser upon the payment of the purchase money, and directing that a large part of the purchase money be paid to one Penn, the owner of the other moiety of the land, for some cause that does not appear; that the said purchaser paid his bid and took a deed for the land; that afterwards, in the year 1878, the said William H. Gentry was adjudged a bankrupt in the district court of the United States, and he assigned to the assignee in bankruptcy his interest in said land, and said assignee sold the same to the defendant Sterling H. Gentry, and he purchased with full knowledge of the manner in which his said father became the purchaser thereof; that the said Sterling H. Gentry has conveyed the land to the defendant A. H. Joyce as trustee, to secure a debt due one George, and said trustee had knowledge and notice of the nature of said Sterling's title.

The plaintiffs insist that the sale of the land under the said proceedings in their names was irregular and unauthorized by law, and they demand judgment:

1. That they have possession of said land.

2. That the sale thereof and all the decrees and orders in relation thereto be declared null and void, and for general relief.

The defendants demurred to the complaint because it does not state facts that constitute a cause of action, and insist that the court of equity and the superior court succeeding to its jurisdiction, had general jurisdiction of the parties to said proceeding in the said court of equity and the superior court, and of the subject matter therein specified, and that the title of the purchaser of said land cannot be invalidated by reason of any supposed irregularity in the pleadings; that they purchased long after the land was sold under the decree, and they were not bound to take notice of the errors of the court, or to look beyond the decrees directing and confirming the sale, the facts necessary to give the court jurisdiction appearing upon the face of the petition.

The action was heard by the court upon the complaint and demurrer. The court gave judgment overruling the demurrer, allowing the defendants to answer, and the plaintiffs to amend their complaint; whereupon, the defendants appealed.

*Messrs. Watson & Glenn*, for plaintiffs.
*Mr. J. T. Morehead*, for defendants.

MERRIMON, J. It is an essential and fundamental principle of the law, that all properly constituted judicial proceedings must be upheld as regular, warranted by the facts and the law applicable to them, valid and effectual, until the contrary shall be shown and established by some competent proceeding for that purpose. Hence, wherever it appears upon the face of the record in any action or other judicial proceeding, that the court had jurisdiction of the parties litigant and the subject matter in litigation, the law presumes that the court got jurisdiction in a regular or proper way, and that its orders, decrees and judgments are valid and effectual, however irregular or fraudulent, until the irregularity and invalidity, because of fraud or other sufficient cause, shall be duly established, and such proceedings, orders, decrees and judgments shall be declared invalid by proper decree. To allow the records of courts of justice, their judgments and decrees, to be questioned and held to be inoperative in the same tribunal that made them, or in other tribunals, would be subversive of judicial authority and destructive of public and private justice. The law is too true to itself, and too thorough in its life and vigor, to allow of such practical absurdity; it requires that its courts shall be careful to see that their judgments settle and establish rights, and when once made must prevail everywhere. The courts making them will be slow to disturb them, and never, except for adequate cause shown in a direct proceeding for the purpose.

It is likewise well settled that courts will protect third persons who honestly do acts and acquire rights under their judgments,

although such judgments may afterwards be reversed. All that such persons need be careful to see, is, that the court had jurisdiction of the parties and the subject matter, and that the order or judgment, upon the faith of which such acts were done or rights acquired, authorized the same to be done or acquired. As, where land was sold by an order of court, it is only necessary that the purchaser should see that the court had jurisdiction of the parties and had authority to order the sale, and that the order did authorize it. This implies, however, that the third person purchased honestly on his part, and without knowledge of fraud on the part of others in procuring or bringing about the sale. He will not be allowed to take advantage of his own fraudulent conduct or that of others, of which he had knowledge at the time of the purchase. *University* v. *Lassiter,* 83 N. C., 38; *Ivey* v. *McKinnon,* 84 N. C., 651; *Sutton* v. *Schonwald,* 86 N. C., 198; *Gilbert* v. *James,* 86 N. C., 244.

Now, the late court of equity and the superior court succeeding to its jurisdiction in Stokes county had authority upon the *ex-parte* petition of the plaintiffs, while they were infants, suing by their mother as next friend, to order and make a valid sale of their land mentioned, for partition, and to pass the title thereto through its commissioner appointed for the purpose. THE CODE §1602; *Ex-parte Dodd,* Phil. Eq., 97; *Rowland* v. *Thompson,* 73 N. C., 504; *George* v. *High,* 85 N. C., 113; *Ivey* v. *McKinnon; Sutton* v. *Schonwald, supra.*

According to the allegations in the complaint, the record upon its face shows that an *ex-parte* petition was filed by the plaintiffs, then infants, suing by their mother as a next friend, suggesting that the land in question ought to be sold, that an order of sale was made and confirmed by the court, the purchase money was paid, and by the like order title was made to the purchaser. Irregularities, important ones, in the proceeding to sell the land are alleged, but it was sufficient for the purchaser (taking it that he purchased honestly and fairly and without the knowledge of fraud on the part of any one in procuring the sale to be made,

and the contrary is not suggested or alleged) to see that the court had jurisdiction of the parties and of the subject matter, and that the order authorized the sale to be made. All this appeared to him.

It is said, however, that the plaintiffs and their mother, represented as being their next friend, in fact, had no knowledge of the filing of the petition or of the sale of the land until recently, long after it was made, and that they never authorized or sanctioned the same.

But the presumption of law is that they had knowledge and notice of the whole proceeding, and it must be taken that they had; that they by themselves, or by an attorney of the court, filed the petition with the practical knowledge and sanction of the court, and the whole was done at their instance, by the court, it having proper regard for the interests of the infants, and they must be bound by the decrees until, by proper action, the whole of the proceeding shall, because of material irregularities, be set aside; or, because of fraud on the part of some one in procuring the sale to be made, declared and decreed to be void; and even then, the sale to the purchaser will remain good and effectual, unless the plaintiffs can allege and prove that he fraudulently procured or participated in the fraudulent procurement of the sale to be made, or had knowledge at the time of the sale of such fraud on the part of others, or such information as put him on inquiry.

It is not alleged that the purchaser, William H. Gentry, purchased otherwise than honestly, nor is there any suggestion in the complaint unfavorable to him, except that he bought the land at greatly less than its reasonable value; but it is alleged, that his son, the defendant Sterling Gentry, purchased from the assignee in bankruptcy "with full knowledge of the manner in which his father became the purchaser." This allegation is vague and indefinite. So far as appears from the complaint the purchase by the father was *bona fide*. If the purchase of the father was tainted with fraud and the son was cognizant of this,

or participated in the fraud, then the plaintiffs ought to have so alleged. The allegation that the defendant Joyce had knowledge of "the nature of said Sterling Gentry's title" at the time he purchased, is so indefinite as that it has neither force nor point.

The complaint is vague, uncertain and indefinite, and it is difficult to determine whether the action was brought to recover the possession of the land, treating the sale in equity as void, or whether the object is to impeach the decree therein for fraud. But be this as it may, in the absence of a denial of what is alleged, we have a painful apprehension that a flagrant fraud was practiced by some person or persons upon the plaintiffs, while they were infants, and, in an important sense, in contemplation of law, under the care and protection of the court. As it now appears to us, to say the least, the court was not circumspect; it allowed itself to be imposed upon by designing and dishonest persons in a respect and about a matter wherein it ought to have given special and careful attention.

This is another sad illustration of the loose and careless practice that too generally prevails in the courts, of allowing guardians *ad litem* and *next friends* of infants to be appointed almost as of course, upon a suggestion, and frequently without that, who, however careless and faithless as to the trust reposed in them, are by implication recognized, and must in the nature of judicial proceedings be treated as recognized by the court.

It is the duty of courts to have special regard for infants, their rights and interest, when they come within their cognizance. The law makes this so, for the good reason, they cannot adequately take care of themselves. It is a serious mistake to suppose that a next friend or a guardian *ad litem* should be appointed upon simple suggestion; this should be done upon proper application in writing, and due consideration by the court. The court should know who is appointed, and that such person is capable and trustworthy. The appointment of guardians *ad litem* and their *duties* are prescribed by statute. THE CODE, §181. But while the statute (§180) allows infants to sue by their next

friends, the manner of the appointment of them and their duties are left as at the common law. As to their appointment, Tidd in his work on Practice says, at page 100: "To constitute a *prochein amy* or *guardian*, the person intended, who is usually some near relation, should come with the infant before a judge at his chambers, or else a petition should be presented to the judge on behalf of the infant, stating the nature of the action, and, if for the defendant, that he is advised and believes he has a good defence thereto, and praying in respect of his infancy that the person intended may be assigned him as his *prochein amy*, or guardian, to prosecute or defend the action. This petition should be accompanied by an agreement signifying the assent of the intended *prochein amy*, or guardian, and an *affidavit* made by some third person that the petition and agreement were duly signed. On being applied to in either of these ways, the judge will grant his *fiat*, upon which a rule or order should be drawn up and filed with the clerk of the rules in the King's Bench, for the admission of the *prochein amy*, or guardian," &c. 2 Arch. Pr., 154; 2 Sell. Pr., 65, Appendix (Forms) 504; Story's Eq. Pl., §§57, 58, and note.

It would have been better if such practice, or the substance of it, had prevailed in this state from the beginning, but a loose practice has been recognized and pursued by the courts, and we cannot now disturb rights that have been acquired under it. If the strict methods in this respect of the English courts had prevailed, it could scarcely be possible that calamitous cases, like this seems to be, and many similar ones that have come before this court, and many that have not, could happen. This evil, in the future, may be easily and thoroughly corrected.

We think the court erred in overruling the demurrer. If the action was brought to recover possession of the land, the complaint states facts showing the title thereto in the defendants; if it may be treated as an action to impeach the decree directing a sale of the land for partition, there is no sufficient allegation that the defendants were in any way connected with or had knowledge of the procurement of the sale so as to affect the validity of

their title. So the complaint, as it stands, "does not state facts sufficient to constitute a cause' of action," and the demurrer ought to have been sustained. There is error.

But the court, in overruling the demurrer, granted leave to the defendants to answer over, and to the plaintiffs to amend the complaint.

Ordinarily, when this court sustains the demurrer, the judgment here is final; but where, as in this case, the court gave the plaintiffs leave to amend the complaint, and it seems they did not have opportunity to amend before the appeal was taken, this court will remand the case, to the end they may amend if they shall be so advised. Otherwise, the superior court will sustain the demurrer and dismiss the action. Generally, when the court thinks the case a proper one for allowing amendments, this should be done before deciding to sustain or overrule the demurrer; if the amendment should be made, it might cut off the ground of demurrer and save delay and expense. *Foy* v. *Haughton*, 83 N. C., 467.

The case will be remanded with instructions to reverse so much of the judgment as overrules the demurrer, and to enter judgment sustaining the same, and dismissing the action, unless the plaintiffs avail themselves of the leave granted to amend the complaint, in which case the action will proceed according to law. It is so ordered. Let this be certified.

Error.                                   Reversed and remanded.