HATTIE V. TATE et als. v. J. J. MOTT et als.

*Judicial Sales—Infants—Jurisdiction—Parties Judgment—*
*Estoppel.*

1. The Superior Courts have succeeded to all the jurisdiction of the late Courts of Equity in respect to infants, and they have authority to direct sales of their property, both real and personal, in proper cases.

2. The guardian or next friend of an infant is not, properly speaking, a party to the action, although his name appears in the record.

3. The next friend of an infant ought always to be appointed by the Court, and really he is an officer of the Court, and under its supervision and control.

4. The Court has power, for good cause shown, to remove the next friend of an infant litigant, and appoint another as often as may be necessary.

5. It is not essential that the infant should know that an action has been brought in his favor by a next friend, as his incapacity to judge for himself is presumed, but the Court may inquire into the propriety of the action and take such steps as may be necessary.

6. Where an infant sues by a next friend he is as much bound by the judgment as an adult, and this rule applies to non-resident as much as to resident infants.

7. A judgment for or against an infant, when he appears by attorney, but has no guardian or next friend, is not void, but only voidable.

8. A guardian appointed in another State has no authority to represent his wards in suits and proceedings in this State, but when he brings suit for them as guardian it will be treated as if he were next friend.

9. So, where non-resident infant tenants in common filed an *ex parte* petition to sell land for partition, by their guardian, who was a non-resident; *It was held*, that the decree of sale was not void, and could not be attacked collaterally.

(*Williams* v. *Harrington*, 11 Ired., 616; *ex parte Dodd*, Phil. Eq., 97; *Sutton* v. *Schonwald*, 86 N. C., 198; *Morris* v. *Gentry*, 89 N. C., 248; *White* v. *Albertson*, 3 Dev., 241; *Marshall* v. *Fisher*, 1 Jones, 111; *England* v. *Garner*, 90 N. C., 197; *Turner* v. *Douglass*, 72 N. C., 127; cited and approved).

CIVIL ACTION to recover land, tried upon a case agreed, before *Boykin, Judge,* at Fall Term, 1886, of IREDELL Superior Court.

The question of title only was tried, it being agreed by the parties that the damages for rents and profits should be reserved until the question of title was settled.

It appears in the record, that William S. Tate died intestate in the county of Iredell in 1879, seized of the land presently to be mentioned, leaving surviving him a widow, the plaintiff Cora M. Tate, and numerous children, all under the age of twenty-one years, except one ; that after the death of her husband, the widow removed to the State of South Carolina, taking her children with her, and in 1881, Samuel J. Douthit was appointed guardian for these infants in that State.

It further appears, that in August, 1881, the widow named above, her daughter of age, and the guardian in South Carolina named, employed counsel in the county mentioned, and brought their *ex parte* special proceeding in the Superior Court of that county, in which the widow and her children, including the infants, filed their petition, the latter by the said Samuel J. Douthit, purporting to be their guardian in South Carolina.

In this petition it was alleged, that the said children were the heirs at law of the said intestate ; that the said Douthit had been duly appointed guardian of the infants named therein ; that the petitioners, except the widow, were each entitled to an undivided one seventh of the land specified and described, subject to the dower of the widow, and she was a petitioner as to her right as doweress ; that the land was of the value of about $2,045 ; that the infants had no other income ; that the houses on the land were going to decay and ruin ; that the petitioners desire a sale of the land to be made under the order of the Court ; that their respective rights be ascertained, and the share of each of the infants in the

proceeds of sale be paid to the said guardian, to be invested for them in South Carolina, and that they had no general or special guardian in this State. The prayer was for a sale of the property, an account, that the several sums due the parties of age be paid to them, and those due the infants be paid to the said guardian, &c.

Thereupon, there was an order of sale, and a commissioner appointed to advertise and sell the land. This order was approved by the Judge. Thereafter, there was a sale of the land, and the defendant W. M. Cooper became the purchaser at the price of $1,435. The commissioner reported the sale, and that the land sold for its full and fair value. This report was confirmed by the Court, and likewise affirmed by the Judge

Thereafter, the purchase money was paid, and the commissioner was directed by the Court to make title to the purchaser, which was done, and the order in this respect was also affirmed by the Judge.

Afterwards, the said purchaser sold and conveyed the land to the defendant Mott, and they had only the notice of the rights of the petitioners that they derived, or might have derived, from the record of the proceedings of the Court in connection therewith.

The present plaintiffs are the children and heirs at law of said William S. Tate, deceased, and they bring this action to recover possession of the land mentioned in the petition above referred to and sold as stated. They allege that the petition and the proceedings of the Court in connection therewith, including the orders, decrees and sale of the land, were null and void; that the Court had, as to that proceeding, no jurisdiction of them, they being at the time residents of the State of South Carolina; that the said Douthit, who professed to represent them as their guardian, had no authority to do so in this State; that they have not received the money for which the land was so sold; that the same has

been paid into Court; that the defendants had knowledge of their infancy, and that they were non-residents of this State, &c. They demand judgment for the possession of the land; that the sale thereof, and all orders and decrees in relation thereto, and the deed executed by the commissioner of the Court, be cancelled and declared null and void; that they recover damages and costs, and pray for general relief. It is not alleged that the land did not sell for its full and fair value, nor is fraud alleged, nor is it alleged that the plaintiffs have in any respect suffered injury in the result of the sale of the land, or that they may yet so suffer.

The Court held that the said petition, and all proceedings of the Court in that connection, were void, and gave judgment for the plaintiffs, from which the defendants appealed to this Court, assigning as error the decree of the Court that such proceedings were void.

*Mr. Johnstone Jones* filed a brief for the plaintiffs.
*Mr. R. F. Armfield,* for the defendants.

MERRIMON, J., (after stating the facts). Under the prevailing system of judicature in this State, the Superior Courts have succeeded to and possess the jurisdiction and power of the late Courts of Equity in respect to infants and their property; and there can be no question that these Courts have authority in all proper cases to direct a sale of their property, both real and personal, for their benefit and advantage. *The Code,* §§1602, 1603; *Williams* v. *Harrington,* 11 Ired., 616; *ex parte Dodd,* Phil. Eq., 97; *Sutton* v. *Schonwald;* 86 N. C., 198; *Morris* v. *Gentry,* 89 N. C., 248.

Generally, an infant can maintain an action if he has a just cause of action, just as an adult may do, the only difference being in the mode of conducting it. His action must be brought and prosecuted in his own name, and it is in all

respects his, just as if he were of full age; but it must be managed and prosecuted, not by himself, but by his guardian or next friend, under the supervision and control of the Court. This is necessary, because of his presumed lack of discretion and want of capacity to understand and manage his own affairs, his inability to bind himself and to become liable for costs. The infant is in an important sense under the protection of the Court; it is careful of his rights, and will, in a proper case, interfere in his behalf, and take, and direct to be taken, all proper steps in the course of the action, for the protection of his rights and interests.

The guardian or next friend is not in a legal sense a party to the action, although his name appears in the record.

The next friend is, or ought always to be, appointed by the Court; he is really its officer, under its supervision and control, appointed for the purpose of bringing and managing the action, and taking care of the infant's rights and interests in and about it. The Court always desires to appoint a person who is friendly to and will take an earnest and active interest in his case. It is therefore usual to appoint his near relation, who, it is supposed, cares particularly for his good; but as it sometimes happens that such relation may have some interest adverse to his, or be unfriendly to him, the Court may, in its sound discretion, designate any discreet and fit person to act as next friend. The next friend should always be selected with care, having in view only the infant's best interests, and substantially in the way suggested in *Morris* v. *Gentry*, 89 N. C., 248. And as the Court appoints and has control of the next friend, if it should find him untrustworthy, or for any just cause unfit for such purpose, it may and ought to remove him and appoint another in his stead, and this may be done repeatedly for just cause. *Morris* v. *Gentry, supra; Bank* v. *Richie,* 8 Pet., 128; *Nalder* v. *Hawkins,* 2 Mylne & Keene, 243; *Mor-*

*gan* v. *Thorn*, Mees & W., 400; Story's Eq. Pl., §§57–59; Tyler on Inf. Cov., §§132–139; 1 Williams on Ex'rs, 98–101.

Ordinarily, for the reasons already stated, an infant does not himself bring his action, and thus put himself in relation with and submit to the jurisdiction of the Court. This is done by his guardian, if he has one, or if he has none, then by his next friend, who regularly obtains leave of the Court to bring the action, although, under a loose and vicious practice that too much prevails, and which ought to be discouraged by the Courts, such actions are sometimes brought without such permission, and are recognized and treated by the Court as if they had been regularly and properly begun. As the infant is presumed to be incapable of acting for himself, he must thus go into Court by his next friend designated by the Court, and submit to its jurisdiction. Otherwise he could not properly bring and maintain an action at all. Nor is it essential that he should know that the action is brought. Because of his presumed incapacity, the guardian or next friend must determine the necessity for and the propriety of bringing it; but the Court may inquire into the propriety of it, and take such steps as it may deem necessary in that respect.

The Court cannot entertain an action without getting jurisdiction of the parties plaintiff and defendant to it, as well as the subject matter of it. It would be a ridiculous mockery for the Court to profess and pretend to settle and adjudge the rights of parties in an action, leaving the plaintiff free to repudiate the judgment at his will and pleasure. When an infant thus brings his action, the Court has jurisdiction of him, just as if he were an adult plaintiff, and orders, judgments and decrees entered in the course of it are binding and conclusive upon him, while they remain unreversed. And generally, any infant may thus bring his action, if he has good cause; and it makes no difference that he is a non-resident of this State. The Courts are open

to non-resident infants as well as non-resident adults—there is no reason why this should not be so, and there is neither principle nor statute that forbids it.    Indeed, it is necessary that they should have such rights.    A non-resident infant may own property in this State and have important rights in a great variety of ways.    Surely, the Courts are open to him, just as to other people.    And when he goes into the Courts to assert and vindicate his rights, he must go as resident infants must do, and be bound by the orders and judgments of the Courts as they are bound.    There can be no difference between the two classes of litigants.

. A judgment for or against an infant when he appears by attorney, and without guardian or next friend, is not void. It is only voidable, and remains operative until it shall, in a proper way, be reversed.    His incapacity is personal to himself, and he is not bound to avail himself of his disability— he may waive his right in this respect.    If he fails to insist upon it in the original action, or by some direct proceeding, such as writ of error, *coram nobis*, or *audita querela*, or the like proper proceeding, he cannot afterwards insist upon his disability in an action upon, or other proceeding to enforce the original judgments against him.    And no more can he repudiate or rid himself of a judgment in his favor in an *ex parte* proceeding, instituted by himself and others for his benefit, if he should afterwards find that he might gain advantage by such course.    Such a judgment might be erroneous or irregular, but it would not be void—it would remain in force until reversed in a proper way.    *White* v. *Albertson*, 3 Dev., 241; *Williams* v. *Harrington, supra; Marshall* v. *Fisher*, 1 Jones, 111; *England* v. *Garner*, 90 N. C., 197; *Turner* v. *Douglass*, 72 N. C., 127; Ewell's Lead. Cases on Infancy, &c., pp. 234, 235, and numerous cases there cited.

In this State, the statute (*The Code*, §180,) provides that infants and certain other classes, whether residents or non-residents, when they sue in the Courts, shall appear by their

general or testamentary guardian, if they have one within the State, and if there shall be no such guardian, then they may appear by their next friend.

It was therefore competent for the mother—the widow—her adult daughter and the infant plaintiffs, although non-residents, to bring their *ex parte* special proceeding to sell the land in question, the orders, judgments and other proceedings in which they seek by this action to have adjudged void. Regularly, however, as the infants had no guardian in this State, a next friend for them in that connection should have been appointed before the petition was filed, by whom they should have appeared in Court. But they purported to appear by their guardian appointed in South Carolina, who, with the approval of their mother and adult sister, assumed to act in that behalf. Although he professed to act as such guardian, he could not, and did not, do so in contemplation of law, because he had no authority as guardian in this State. The Court nevertheless recognized the appearance of the infants by him and took jurisdiction of them and the subject matter of the proceeding, and thus, in legal effect, treated him as their next friend. He, the mother of the infants, and their sister of full age, brought their proceeding and employed counsel to conduct the same. The Court took jurisdiction, granted the prayer of the petition, the land was sold, the purchase money therefor was paid, the sale was confirmed, and the title conveyed to the purchaser, and the orders and judgments made by the Court to that end passing under the direct supervision of the Judge, and receiving his signature, as required by the statute in such cases. Though the proceeding was irregular in some respects, and erroneous in others, unquestionably it was not void. The Court had jurisdiction of the parties and of the subject matter. If there had been no next friend of the infants, the orders and judgments would not, on that account, be void—at most, they would only be voidable. But there

was in effect a next friend, recognized and treated as such by the Court. It must be so taken, because, the Court, seeing that the infants appeared by one purporting to be their guardian in South Carolina, and who acted in their behalf, took action as if he were their next friend in the proceeding. Although such action of the Court was irregular, it was not void. It ought to have made the proceeding regular by proper amendatory orders, entered of record, or else it ought to have dismissed it. Still, the Court did what it had power to do, and therefore its acts were not void. The mere fact that the person who was so recognized and acted as next friend was a non-resident of this State, did not render his acts as such void. As we have seen, he was not a party to the proceeding. He was the recognized officer of the Court in that respect, under its control and direction. The Court might—perhaps ought, to have removed him and appointed a regular next friend in his stead, but what he did was not void—it served the purpose of a proper proceeding, and certainly had the implied, if not the positive, sanction of the Court.

The infants appeared by a person undertaking to represent and acting for them, not altogether officiously, but who had not been appointed by the Court for that purpose. He did irregularly what was necessary and proper to be done by a next friend. It must be so taken, because, as we have said, the Court recognized him as serving a proper purpose—that of a next friend—and acted upon the appearance of the infants by him. Otherwise, it would not have granted the prayer of the petition. *White* v. *Albertson, supra.* It was essential that there should be an appearance by a next friend, who ought to have been regularly appointed, but as one appeared in fact, and the Court so treated him, that was sufficient for the purpose of acquiring complete jurisdiction. So far as appears from the record, the infants appeared advisedly in Court in

their own special proceeding and obtained relief for their benefit.

The Court therefore erred in deciding that the proceeding in question, including the orders, judgments and the sale of the land complained of, was void.  They were not void, and nothing is alleged or proven, that could warrant the Court in setting them aside.  It is not alleged that they were fraudulent or that the infants suffered injury or prejudice by them.

Of course the guardian in South Carolina will not be allowed to remove the fund belonging to the infants until he shall have complied with the requirements of the statute, (*The Code*, §§1598, 1599,) prescribing how a foreign guardian may have his ward's property in this State removed to the State of the latter's domicile.

The defendants are entitled to a new trial.  To that end let this opinion be certified to the Superior Court according to law.  *It is so ordered.*

Error.                                                    Reversed.