R. L. JOHNSON v. PILOT LIFE INSURANCE COMPANY.

(Filed 28 February, 1940.)

**1. Limitation of Actions § 16—**

While the burden is on plaintiff to show that his cause of action is not barred by the statute of limitations, and in an action for fraud must show that the cause was instituted within three years from the discovery of the fraud or the time it should have been discovered in the exercise of due diligence, proof of mental incapacity until within the statutory period is sufficient.

**2. Limitation of Actions § 7: Insane Persons § 19—Adjudication of sanity is evidence of sanity but is rebuttable in independent action.**

Plaintiff instituted this action to recover disability benefits alleged to be due him under the terms of a life insurance policy and to rescind on the ground of fraud a release of liability signed by him. Defendant introduced in evidence an adjudication of the sanity of plaintiff entered in a lunacy proceeding more than three years prior to the institution of the action, and moved to dismiss as of nonsuit on the ground that the action was barred by the three-year statute of limitation. *Held:* The adjudication of sanity is not binding on those who were not parties or privies to the proceeding, and while it is evidence of sanity, it is rebuttable, and this evidence, together with defendant's other evidence tending to show the sanity of plaintiff, does not entitle defendant to judgment as of nonsuit when plaintiff offers evidence in rebuttal tending to show mental incapacity from the time of the occurrence of the accident causing disability up to the time of the institution of the action.

**3. Limitation of Actions § 7—**

The failure of the guardian to institute actions which he has the authority and duty to bring on behalf of his ward is the failure of the ward, entailing the same legal consequences with respect to the bar of the statutes of limitation.

**4. Same—Evidence held not to show that guardian knew or should have known of fraud and his failure to institute suit does not bar ward.**

Plaintiff instituted this action to recover disability benefits alleged to be due him under the terms of a life insurance policy and to rescind on the ground of fraud a release of liability signed by him. Defendant introduced evidence that plaintiff had been adjudged insane and a guardian appointed for him more than three years before the institution of the action, and contended that the mental incapacity asserted by plaintiff as a disability preventing the running of the statute was terminated by the appointment of the guardian, and that the statute having begun to run upon the appointment of the guardian more than three years prior to the institution of the action, the cause was barred unaffected by a later adjudication of plaintiff's sanity and the termination of the guardianship. *Held:* Whether the guardian knew, or was put upon inquiry which would have discovered the alleged fraud, is determinative of whether the guardian should have instituted action, and the evidence is insufficient to support a holding, as a matter of law, that the cause of action was barred.

BARNHILL, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Cowper, Special Judge,* at September Term, 1939, of NASH. Reversed.

*Dan B. Bryan, Harold D. Cooley, and I. T. Valentine for plaintiff, appellant.*

*Smith, Wharton & Hudgins, Battle & Winslow, and O. B. Moss for defendant, appellee.*

SEAWELL, J. The appeal of the plaintiff is from a judgment as of nonsuit made at the conclusion of plaintiff's evidence and at the conclusion of all the evidence.

Plaintiff sued on an insurance contract containing provisions for the payment of fixed installments to the insured on proof of total and permanent disability, as defined in the contract and, upon the conditions named, waiving further payment of premiums.

Plaintiff claims that by reason of an accident, presently described, he was disabled within the meaning of the insurance policy and liability thereon had accrued. He further complains that while he was physically weak and without mental capacity to make a contract, the defendant, through its representatives and agents, came to see him and fraudulently procured from him a release from liability on the payment to him of the sum of $5,000.00, which he alleges is an unfair and inadequate consideration. He seeks to have this settlement rescinded and to recover the amount alleged to be due on his insurance down to the institution of this action—$13,500.00, subject to the credit of $5,000.00 received in the challenged settlement.

The defendant admits the contract, denies liability upon it, pleads the release, and claims that the settlement was fair and unaccompanied by

any fraud or undue influence or unfair practice in its procurement. Defendant avers that plaintiff was mentally competent to execute the release and contends that the settlement, as it appeared at the time, was not unfavorable to plaintiff.

Defendant further pleads the bar of the statute of limitations, alleging that the plaintiff's cause of action did not accrue during the three years next preceding the commencement of this action.

The plaintiff, seeking to repel the bar of the statute, alleges that he was wanting in mental capacity, in fact was insane, and, therefore, under disability to sue from the time he sustained his injury, which resulted in his disablement under the terms of the policy, until a time well within the period of three years next preceding the institution of the action, and could not be held, therefore, to have discovered, during that period, the fraud perpetrated upon him.

In view of the conclusion we have reached in this case, much of the evidence need not be restated. We think the case boils down to a consideration of the bar of the statute of limitations and the evidence *pro* and *con* upon this point.

From the record, it appears that the plaintiff sustained his injury on 20 May, 1929. On that day he was run over and trampled by a mule on his farm. The upper vertebra of his neck was broken and he sustained other injuries which necessitated hospital treatment. He was put in a cast which reached from the base of the skull almost to the lower end of the spinal column, and remained in this condition for a long while.

Nurses at the hospital and certain persons who came in contact with him from that time on testified that he was mentally incapacitated from that time down to the trial of the case, and the evidence had sufficient body and probative force to be submitted to the jury on that point, if there is no legal impediment to its consideration. Against this evidence, and in contradiction thereof, the defendant offered much evidence to the effect that the plaintiff was mentally competent to transact business, not only at the time the release was procured, but for a time outside the three-year period, during which, as it contends, his cause of action must have accrued, if he had knowledge of the fraud perpetrated upon him or was put upon inquiry as to it. In support of this contention, the defendant introduced testimony of experts and evidence of many business transactions had between the plaintiff and others during that period which tended to prove him of sound mind.

Also, the defendant introduced records showing that the plaintiff had been committed to the State Hospital as an insane person and guardians appointed for him on 21 March, 1933, and the record of a lunacy proceeding had on 7 November, 1933, in which a jury found the plaintiff to be of sound mind, following which the guardianship ended and he

was restored to the management of his own affairs. In this connection, the defendant contends that under the evidence plaintiff's cause of action accrued during this guardianship, and, in support of that, introduced correspondence between the guardians and the insurance company relating to the insurance and settlement had with plaintiff. The defendant further contends that the order in the lunacy proceeding in which plaintiff was pronounced sane and restored to the management of his affairs is *res judicata* on this point in the present case and bars the plaintiff from asserting a condition of insanity contrary to that finding.

To summarize, the defendant insists, (a) that plaintiff is now barred from maintaining this action, since the statute began to run during the guardianship, and that the bar was effective, therefore, long before plaintiff sued, and (b) that the lunacy proceeding definitely established his status as a sane person; and whether or not the statute had begun to run before that, it must have run from that time, which was several days over the three-year period. This action was begun 28 November, 1936, and the adjudication was 25 November, 1933. This would have left the plaintiff only a part of three days in which to piece together the mental picture and make whatever investigation might be necessary before discovery might be said to be complete.

Defendant points out that since plaintiff is endeavoring to repel the statute, because of fraud practiced upon him, he must show affirmatively that such discovery was made, or that the circumstances putting him on inquiry occurred within the three-year period, and that upon this the record is silent.

Nothing else appearing, this is true; but all of these conditions may be met by proof of mental incapacity until within the statutory period, unless, as a matter of law, the plaintiff is precluded from the benefit of such evidence.

1. The mental capacity of the plaintiff was a fact, capable of proof as any other fact, regardless of the finding of the jury in the lunacy proceeding or the order of court following upon it. Certainly if a person is adjudged sane in a lunacy proceeding, he is no more conclusively so than he might be under natural conditions before the law became concerned with the inquiry, and an adjudication of such a court, when presented in a matter not connected with the immediate purpose and scope of the proceeding, when admissible at all, is no more than evidence. *Sprinkle v. Wellborn,* 140 N. C., 163, 52 S. E., 666.

Between those who are not parties or privies to the proceeding, an order in a lunacy proceeding under the statute adjudging a person of unsound mind, or an order in a subsequent proceeding adjudging a person to be of sound mind and restoring him to the management of his own affairs, is not *res judicata,* and is not necessarily conclusive of the

mental condition of the person discharged. It may serve as evidence of the condition it purports to find, but such presumptions as arise from it are rebuttable; Freeman on Judgments, 5th Ed., p. 1901, sec. 903; *Rippy v. Gant,* 39 N. C., 443; *Christmas v. Mitchell,* 38 N. C., 535; *Parker v. Davis,* 53 N. C., 460; *Slaughter v. Heath,* 127 Ga., 747; *Cathcart v. Massey,* 105 S. C., 329, 89 S. E., 1021; *Watson v. Banks,* 154 Ark., 396, 243 S. W., 844; *Challoner v. New York Evening Post Co.,* 263 Fed., 335; Annotations to *Westerland v. First National Bank,* 7 A. L. R., 568; and the better view is that where the plea of insanity is made, it is not incumbent upon the person who pleads it to specifically show that he became insane after the day of the adjudication. *Emory v. Hoyt,* 46 Ill., 258.

2. The briefs and argument raise the question whether the failure of the guardians to bring action started the running of the statute of limitations against the ward, and the litigants are entitled to the views of the court on that subject.

Decisions are not uniform on this subject. Necessarily, many of them must depend upon the relations between the guardian and the ward and between the two of them and the public, consequent upon statutory enactment. *Funk v. Wingert* (Md.), 6 A. L. R., 1686, 107 A., 345, and cases cited; see annotation, especially p. 1693.

C. S., 407, provides that a person entitled to commence an action (with certain exceptions not pertinent to this case), who is (1) within the age of twenty-one years or (2) insane, "may bring his action within the times herein limited after the disability is removed," with certain exceptions which need not be considered. It is contended that the appointment of a guardian, under our guardianship laws, will not start the running of the statute, but that the provision preserves the right of action to the ward intact when relieved of the disability of insanity, notwithstanding the guardianship. There is support for that position both in the State and Federal Courts with respect to the statutes construed in such supporting opinions. Among those cited are: *Robinson v. U. S.,* 12 Fed. Supp., 160; *Shanbegian v. U. S.,* 14 Fed. Supp., 93; *Johnson v. U. S.,* 87 Fed. (2d), 940; *Texas Utilities Co. v. West,* Tex. Civ. App., 59 S. W. (2d), 459; *Finney v. Speed,* 71 Miss., 32, 14 So., 465; *Bourne v. Hall,* 10 R. I., 139; *Masengale v. Barnes et al.* (Tex. Civ. App.), 106 S. W., (2d), 368; *Funk v. Wingert, supra.* Without analyzing these authorities with reference to the statutes upon which some of the decisions largely rest, we readily concede that they are strongly in support of the contention of the plaintiff on the general law of the subject. But a different rule obtains in North Carolina, and, we think, with reason.

The policy of repose which underlies statutes limiting the time in which actions may be brought would be imperfectly expressed if these statutes did not apply to all those who might bring such actions, and actions which might be brought in their behalf. On that theory, the representation of the ward by the guardian should be complete as to actions which the guardian might bring and which it was incumbent on him to bring, in so far as may be consistent with the limitations of his office.

Among other powers and duties of the guardian laid down in the law, we have the following: "C. S., 2169. To take charge of estate. Every guardian shall take possession, for the use of the ward, of all his estate, and may bring all necessary actions therefor." Under this, we apprehend that it is the duty of the guardian to bring suit, when necessary, upon the choses in action belonging to the ward's estate, and to recover any moneys due him, and to plead any equitable matter that may be necessary for recovery in such action.

A qualification must be made as to suits for realty, where the legal title is in the ward. *Culp v. Lee* (1891), 109 N. C., 675, 14 S. E., 74. Where this obstacle to a suit by the guardian does not arise, ordinarily the failure of the guardian to sue in apt time is the failure of the ward, entailing the same legal consequence with respect to the bar of the statute. *Cross v. Craven* (1897), 120 N. C., 331, 26 S. E., 940. Exposure to a suit by the guardian—one which was within the scope of both his authority and duty—for a sufficient length of time, would constitute a bar to the action of the ward. *Culp v. Lee, supra; Nunnery v. Averilt,* 111 N. C., 394, 16 S. E., 683. The clear import of these cases is against the position taken by the plaintiff.

But the statute we are considering starts running on the maturity of a psychological condition or event—discovery of the fraud or knowledge of circumstances which would put the person claiming the right to sue on inquiry. Upon the pertinent evidence, we are unable to hold, as a matter of law, that such condition existed.

We are of the opinion that the evidence is sufficient to carry the case to the jury, and the judgment as of nonsuit is

Reversed.

BARNHILL, J., took no part in the consideration or decision of this case.