604 F.2d 281
 GENESCO, INC., a corporation, G. C. Murphy Company, a
corporation, and Continental Casualty Company, a
corporation, Plaintiffs,
and
Susan K. Williams, by her next best friend, Emma L.
Williams, Appellant,
v.
CONE MILLS CORPORATION, a corporation, Appellee.
 No. 78-1730.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 8, 1979.
Decided July 27, 1979.
 
 James C. West, Jr., Clarksburg, W. Va. (Jones, Williams, West & Jones, Dean C. Ramsey, Jones, Williams, West & Jones, Clarksburg, W. Va., on brief), for appellant.
 J. Donald Cowan, Jr., Greensboro, N. C. (William L. Young, Smith, Moore, Smith, Schell & Hunter, Greensboro, N. C., on brief), for appellee.
 Before WINTER, BUTZNER and PHILLIPS, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 Unlike most jurisdictions, North Carolina does not suspend the running of the statute of limitations on an infant's cause of action during the period of infancy when the infant has a guardian charged with the duty of bringing the action on his behalf. In this diversity case, the District Court for the Middle District of North Carolina ruled that the statute of limitations on the claim of Susan K. Williams (Susan), a minor, against Cone Mills Corporation (Cone Mills), for injuries sustained when her nightgown made from material woven by Cone Mills caught fire, began to run when Emma L. Williams (Emma), her mother, brought suit on her behalf as her next friend in the District Court for the Northern District of West Virginia against G. C. Murphy Company (Murphy) for the same injuries.
 
 
 2
 We disagree. We hold that, for purposes of the North Carolina law of limitations, the filing of the complaint by Emma as Susan's next friend in West Virginia did not constitute the appointment of Emma as a guardian Ad litem, charged with the duty of bringing the instant suit against Cone Mills, and therefore did not start the running of the statute of limitations. We further hold that Susan's claim against Cone Mills is not barred by her court-approved settlement with Murphy and Greensboro Manufacturing Company (Greensboro) for the same injuries. We therefore reverse the judgment of the district court and remand the case for further proceedings.
 
 I.
 
 3
 On February 15, 1972, Emma filed a complaint against Murphy in the Northern District of West Virginia. The caption of the complaint listed the plaintiffs as "SUSAN K. WILLIAMS, who sues by Emma L. Williams, her mother and next friend, and EMMA L. WILLIAMS." The complaint alleged that on March 8, 1971, shortly before Susan's twelfth birthday, Susan was injured when her nightgown, recently purchased by Emma from Murphy, caught fire. The complaint, seeking damages for Susan in the amount of $1,124,400, included claims of negligence, strict product liability, and breach of express and implied warranty. Murphy filed a third-party complaint against Greensboro, alleging that Greensboro had manufactured the nightgown and sold it to Murphy, and demanding judgment against Greensboro for any sums that Emma and Susan might recover from Murphy. On February 22, 1974, the district court in West Virginia appointed Union National Bank of Clarksburg (Union) as legal guardian of Susan's estate.
 
 
 4
 The parties subsequently agreed to a settlement, under the terms of which Murphy and Greensboro would pay Susan $170,000 in exchange for a release from liability, and the settlement was submitted to the district court for its approval. On March 4, 1974, the district court appointed Francis L. Warder (Warder), an attorney, as guardian Ad litem for Susan, and upon Warder's representation that the settlement was fair and in Susan's best interests, the court entered an order authorizing and approving the settlement.[1]
 
 
 5
 On February 14, 1975, Murphy, Genesco, Inc. (Genesco), which had acquired Greensboro, and their insurer, Continental Casualty Company (Continental), sued Cone Mills in the Western District of North Carolina. The complaint alleged that Cone Mills had manufactured and sold to Greensboro the fabric which Greensboro used to make Susan's nightgown, and indemnification was demanded from Cone Mills for the $170,000 settlement paid to Susan. On January 21, 1976, Susan, by Emma as her next friend, filed a motion to be added as a plaintiff, and the district court granted this motion on February 6, 1976. Also on February 6, the court granted Cone Mills' motion to transfer the case to the Middle District of North Carolina.
 
 
 6
 In September 1977, plaintiffs filed an amended complaint. Count I repeated the claim of Genesco, Murphy, and Continental for indemnification from Cone Mills in the amount of $170,000. Count II set forth Susan's claim against Cone Mills for negligence and breach of warranty in the manufacture and sale of the fabric by Cone Mills and sought recovery of $1,124,400 for her injuries.
 
 
 7
 The District Court for the Middle District of North Carolina granted Cone Mills' motion for summary judgment against Susan. The court held that Emma's filing of a suit as Susan's next friend against Murphy in West Virginia constituted, for purposes of the North Carolina law of limitations, the appointment of Emma as a guardian Ad litem to pursue relief for Susan for her injuries sustained by the burning of the nightgown. Since that suit had been filed on February 15, 1972, and since the North Carolina period of limitations for personal injury and breach of warranty is three years, N.C.Gen.Stat. § 1-52(1), (5) (1969), the district court reasoned that Susan's claim against Cone Mills, asserted by her motion to be added as a plaintiff in the Western District of North Carolina on January 21, 1976, was barred. The district court certified the judgment against Susan as final under rule 54(b), F.R.Civ.P., and Susan appealed.
 
 II.
 
 8
 Like most states, North Carolina has a statute providing that since an infant lacks capacity to bring suit, the statute of limitations does not begin to run against him until the incapacity is lifted by his reaching the age of majority. N.C.Gen.Stat. § 1-17(a)(1) (Supp.1977). The North Carolina courts, however, have developed an exception to this statute when the infant is represented by a guardian. The exception was stated most clearly by the North Carolina Supreme Court in Rowland v. Beauchamp, 253 N.C. 231, 116 S.E.2d 720 (1960):In North Carolina, contrary it seems to the general rule in most jurisdictions, the rule . . . is that the statute of limitations runs against an infant as to all rights of action, "which the guardian might bring and which it was incumbent on him to bring, in so far as may be consistent with the limitations of his office."
 
 
 9
 116 S.E.2d at 722 (quoting Johnson v. Pilot Life Insurance Co., 217 N.C. 139, 7 S.E.2d 475, 477 (1940)). The rationale of the Rowland doctrine is that since an infant represented by a guardian has the capacity, despite his infancy, to bring suit through his guardian, there is no need to suspend the running of the statute of limitations.
 
 
 10
 It is agreed by all parties that the statute of limitations on Susan's claim against Cone Mills did not begin to run prior to the filing of suit against Murphy in the Northern District of West Virginia. Cone Mills contends, however, that when Emma filed that complaint as Susan's next friend, she thereby became Susan's guardian Ad litem, and at that moment the North Carolina statute of limitations on Susan's claim against Cone Mills began to run. In passing upon this contention, our task is to determine the effect which North Carolina, under the Rowland doctrine, would accord to the procedure which permitted Emma to represent Susan as her next friend in the Northern District of West Virginia. We begin by comparing the practice by which infant plaintiffs may be represented in federal courts under rule 17(c), F.R.Civ.P.,[2] with its counterpart under North Carolina law.
 
 Federal Rule 17(c) provides:
 
 11
 Whenever an infant or incompetent person has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. If an infant or incompetent person does not have a duly appointed representative he may sue by his next friend or by a guardian ad litem. The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person.
 
 
 12
 By its terms, the second sentence of Rule 17(c) permits an infant who lacks a general guardian to bring suit by his next friend, and no special appointment process for the next friend is required. Russick v. Hicks, 85 F.Supp. 281, 283 (W.D.Mich.1949); See Child v. Beame, 412 F.Supp. 593, 597-99 (S.D.N.Y.1976); Williams v. Wohlgemuth, 366 F.Supp. 541, 542 n. 1 (W.D.Pa.1973), Aff'd mem., 416 U.S. 901, 94 S.Ct. 1604, 40 L.Ed.2d 106 (1974). The federal district court may, of course, appoint a guardian Ad litem in its discretion, and it must do so (or take other equivalent protective action) when it appears that the next friend will not adequately protect the infant's interests.
 
 
 13
 This federal procedure was invoked by Emma when she brought suit on Susan's behalf in the Northern District of West Virginia. Without any prior appointment or other formal judicial procedure, Emma filed a complaint in Susan's name as her next friend. Emma maintained control over prosecution of the suit for two years, until the district court in West Virginia appointed Union as general legal guardian of Susan's estate on February 22, 1974, and Warder as her guardian Ad litem on March 4, 1974.
 
 
 14
 By contrast, in North Carolina a next friend or guardian Ad litem must be appointed in accordance with established procedures and standards. It has long been the law in North Carolina that a next friend or guardian Ad litem cannot step forward and assume on his own the authority to prosecute the infant plaintiff's suit; rather, his authority is based on appointment by the court. "The next friend is, or ought always to be, appointed by the court. He is really its officer, under its supervision and control, appointed for the purpose of bringing and managing the action, and taking care of the infant's rights and interests in and about it." Tate v. Mott, 96 N.C. 19, 2 S.E. 176, 177 (1887). Furthermore, the appointment by the court must be more than the routine approval of any applicant who claims to represent the infant's interests.
 
 
 15
 It is a serious mistake to suppose that a next friend or a guardian Ad litem should be appointed upon simple suggestion; this should be done upon proper application in writing, and due consideration by the court. The court should know who is appointed, and that such person is capable and trustworthy.
 
 
 16
 Morris v. Gentry, 89 N.C. 248, 254 (1883).[3] These requirements for the appointment of a next friend have been carried forward into the North Carolina Rules of Civil Procedure. N.C.R.Civ.P. 17(b), (c).
 
 
 17
 We do not regard the North Carolina standards and procedures for the appointment of a next friend or guardian Ad litem as accidental; rather, they reflect a special concern of the North Carolina courts for protecting the interests of the infant. Under the Rowland doctrine, the North Carolina statute of limitations runs against an infant when he has a legal guardian who is charged with the duty of bringing suit on his behalf. If the guardian does not protect the infant's interests by bringing suit within the period of limitations, the infant, who lacks both the practical maturity to safeguard his own interests and the legal capacity to bring suit on his own behalf, may lose important and valuable rights by default. As a result, in the courts of North Carolina, even the parent or other natural guardian of the infant cannot step forward as self-appointed guardian Ad litem, nor will the courts make such appointments in a perfunctory manner.
 
 
 18
 From these considerations, we conclude that the courts of North Carolina would not regard Emma's filing of a complaint as Susan's next friend in the Northern District of West Virginia as sufficient to start the North Carolina statute of limitations running against Susan in the present action.
 
 
 19
 First, the filing of a next friend complaint did not invest Emma with any authority as Susan's guardian under North Carolina procedure. The Rowland doctrine applies only when a guardian is authorized to bring suit for the infant on the claim in question. Any authority to prosecute Susan's suit in West Virginia was obtained by Emma solely by her self-designation as Susan's next friend. The filing of the same complaint in a North Carolina state court, where a guardian Ad litem is required to be judicially appointed, would not vest Emma with any authority and would not start the statute of limitations running under Rowland. We do not think that a different result obtains because Emma filed her suit in federal court in West Virginia rather than in state court in North Carolina.
 
 
 20
 Second, even if Emma's next friend complaint in the Northern District of West Virginia vested her with sufficient authority to make the Rowland doctrine applicable, we do not think that this authority extended beyond prosecution of Susan's claim against Murphy. Under the Rowland doctrine, the statute of limitations runs only on those causes of action "which the guardian might bring and which it was incumbent on him to bring, in so far as may be consistent with the limitations of his office." Johnson v. Pilot Life Insurance Co., 217 N.C. 139, 144, 7 S.E.2d 475, 477 (1940), Quoted in Rowland v. Beauchamp, 116 S.E.2d at 722. If Emma acquired the status of guardian Ad litem of Susan by virtue of filing the complaint, then the scope of that guardianship must be determined by the terms of that complaint. The complaint states a claim against Murphy alone and makes no reference whatever to Cone Mills. Since Emma chose not to join Cone Mills as a defendant in West Virginia,[4] the scope of her "self-appointment" as Susan's next friend did not extend beyond prosecution of the claim against Murphy. Thus, the filing of the complaint did not impose upon Emma a duty, sufficient to invoke the Rowland doctrine, to seek relief from all persons who might be liable to Susan for the injuries sustained from the burning of her nightgown.[5]
 
 
 21
 In this respect, we find the instant case similar to Teele v. Kerr, 261 N.C. 148, 134 S.E.2d 126 (1964). In that case the North Carolina Supreme Court held that the appointment of an infant's father as next friend to prosecute a tort action on the infant's behalf did not impose upon the father, once a favorable judgment in the tort action had been obtained, the duty to bring an action to enforce the judgment. Thus, the statute of limitations on the action to enforce the judgment did not begin to run until the infant reached the age of majority. The court concluded its opinion by explaining:
 
 
 22
 This holding does not impinge upon any statement in Rowland v. Beauchamp . . . . Rowland involved a question of the application of the statute of limitations to the specific action which the next friend was appointed by the court to bring. The instant case is a new and independent action; hence, Rowland is inapplicable.
 
 
 23
 134 S.E.2d at 129. See also Johnston County v. Ellis, 226 N.C. 268, 38 S.E.2d 31 (1946).
 
 
 24
 Finally, we believe that application of the Rowland doctrine to the instant case would be contrary to North Carolina's policy of protecting the interests of infants in litigation. As we have noted, the Rowland doctrine ascribes special importance to the obligation of North Carolina state courts to select as guardian Ad litem a "capable and trustworthy" person who will adequately represent the infant's interests. In the federal action in West Virginia, the district court never appointed Emma as guardian Ad litem or passed upon her suitability for such a position. Indeed, if the district court can be said to have expressed any view at all on the subject, its subsequent appointment of Union as general guardian of Susan's estate and Warder as her guardian Ad litem suggest that the court found Emma's qualifications wanting. The requisites of North Carolina's Rowland doctrine would hardly be served by starting the statute of limitations running when an infant's mother takes it upon herself to file a next friend complaint in a jurisdiction outside North Carolina and no court has passed upon her suitability as a guardian Ad litem.
 
 
 25
 We therefore conclude that the district court erred in holding that the North Carolina statute of limitations on Susan's claim against Cone Mills began to run when Emma filed a complaint as Susan's next friend against Murphy in the Northern District of West Virginia.
 
 III.
 
 26
 As an alternative argument, Cone Mills asserts that the North Carolina statute of limitations on the instant action began to run when the federal district court in West Virginia appointed Union as general guardian of Susan's estate. Because that appointment was made on February 22, 1974, Cone Mills reasons that the three-year statute of limitations has run and that the instant action against it is thereby barred. We find the argument without merit.
 
 
 27
 First, we doubt whether North Carolina courts would apply the Rowland doctrine to begin the running of the statute of limitations upon Union's appointment as general guardian. North Carolina courts do not permit a suit to be brought on behalf of an infant by a guardian appointed only in another state. See Tate v. Mott, 96 N.C. 19, 2 S.E. 176 (1887). Certainly the Rowland doctrine applies only when the infant has a guardian capable of bringing suit on his behalf in North Carolina.
 
 
 28
 Even if we assume that the statute of limitations on the present claim began to run on February 22, 1974, the terms of the three-year statute of limitations were satisfied when Susan, by her next friend Emma, moved to be joined as a plaintiff in the district court on January 21, 1976. Whatever the capacity of Emma to serve as Susan's next friend in federal district court in North Carolina,[6] we hold that this motion, subsequently granted by the district court, was sufficient to toll the North Carolina statute of limitations.
 
 IV.
 
 29
 Cone Mills also contends that we should affirm the judgment in its favor on a wholly different ground that the present action is barred by the principle that there can be but one complete satisfaction for an injury. Cone Mills contends that through the settlement reached in West Virginia with Murphy and Greensboro, Susan received "full and complete satisfaction" for the injuries she had sustained. This contention was advanced in the district court, but that court did not address it. We find it without merit.
 
 
 30
 The fatal flaw in Cone Mills' argument is that nothing in the record or final court order in the West Virginia case indicates that the amount paid by Murphy and Greensboro in settlement of Susan's claims was intended as "full and complete satisfaction" for her injuries. The settlement was a compromise. Susan, through her representatives, agreed to accept $170,000 in settlement of a $1,124,400 claim, in order to avoid the expense and uncertain outcome of further litigation. There is no reason to believe, at this stage in the present proceedings, that any damage award against Cone Mills would grant Susan double recovery for her injuries. The facts of the instant case bring it squarely within the holding of the West Virginia Supreme Court of Appeals in Tennant v. Craig, 156 W.Va. 632, 195 S.E.2d 727 (1973). In Tennant, the infant plaintiffs, riding in one car, were injured in a collision with two other cars. A settlement was reached between the infants, through their guardians, and the driver of the first car; the settlement was submitted to a West Virginia court for approval; and the court entered its approval in accordance with state law. In a subsequent suit by the infants' guardians against the driver of the second car, the defendant driver pleaded the prior settlement as a bar to further recovery. The West Virginia Supreme Court of Appeals cited the established principles that release of one joint tortfeasor does not automatically release all others, but that any partial satisfaction paid by the first tortfeasor in exchange for the release must be credited against any recovery obtained from the other tortfeasors. The court thus held that the lawsuit against the driver of the second car could proceed despite the earlier settlement.
 
 
 31
 In the instant case, since both Susan's injuries and her settlement with Murphy and Greensboro took place in West Virginia, we believe that the North Carolina courts would find West Virginia law and thus the Tennant case controlling. See Butler v. Norfolk Southern Railway, 140 F.Supp. 601 (E.D.N.C.1956); Restatement (Second) of Conflict of Laws § 170 (1971). We note, however, that the same result would be reached if North Carolina law were applied. In Payseur v. Rudisill, 15 N.C.App. 57, 189 S.E.2d 562, Cert. denied, 281 N.C. 758, 191 S.E.2d 356 (1972), an infant injured in a two-car collision brought a single lawsuit, through a guardian Ad litem, against the drivers of both cars. While the suit was pending, a settlement was reached with one driver and was approved by the court. The settlement expressly provided that the other driver would not be released thereby. The other driver then moved for dismissal of the claim against him, but the North Carolina Court of Appeals, citing § 4 of the Uniform Contribution Among Tortfeasors Act, N.C.Gen.Stat. § 1B-4 (1969),[7] allowed the suit to continue.
 
 
 32
 Since nothing in the settlement with Murphy and Greensboro indicates an intention to release Cone Mills or any other person who may be liable for Susan's injuries, the settlement is no bar to Susan's claim against Cone Mills. If Cone Mills is ultimately found liable, Susan's recovery will be reduced by the $170,000 she has already received from Murphy and Greensboro. If the damages for which Cone Mills is found to be liable are less than $170,000, then judgment will be entered for Cone Mills. But the liability of Cone Mills, if any, cannot be made on the current state of the record and we express no view with respect thereto.
 
 
 33
 REVERSED AND REMANDED.
 
 
 
 [1]
 The court's order stated in pertinent part:
 It is therefore, ORDERED that The Union National Bank of Clarksburg, a corporation, as legal guardian of Susan Kay Williams, an infant, be and it is hereby authorized to make settlement with G. C. Murphy Co., a corporation and Greensboro Manufacturing Co., a corporation and its insurers for and on account of the injuries sustained by said infant as the result of the ignition and burning of the nightgown which she was wearing on or about March 8, 1971, . . . or in any manner arising therefrom, for the total sum of One Hundred Seventy Thousand Dollars ($170,000.00), . . . and said legal guardian is authorized and directed, on receipt of said sum, . . . to execute and deliver to said G. C. Murphy Co., a corporation and Greensboro Manufacturing Co., a corporation, and its insurers, or their attorneys, the release of the claims for said infant as provided by Chapter 44, Article 10, Section 14, of the Code of West Virginia.
 The cited West Virginia statute provides:
 In any case where an infant is injured in his person or his property by another, the legal guardian of such infant may negotiate with the person inflicting such injury for the settlement of any claim for damages therefor. But the guardian shall, when proceeding under this section, before making final settlement, file his petition in equity with the circuit court of the county . . . in which he was appointed, for permission to settle such claim . . . . The court . . . shall appoint a guardian ad litem for the ward who shall answer the petition. Upon the hearing thereof, the court . . . may grant or refuse the petition by a proper order, as may seem just and proper. . . .
 W.Va.Code § 44-10-14 (1966).
 
 
 [2]
 West Virginia has adopted a rule substantially identical to federal rule 17(c). W.Va.R.Civ.P. 17(c). We therefore need not consider the extent to which federal rule 17(c) may supersede state laws in governing the procedure by which federal courts insure that the interests of infant litigants are adequately protected. See generally 6 C. Wright & A. Miller, Federal Practice and Procedure § 1571 (1971)
 
 
 [3]
 In both Tate and Morris, the court went on to hold that an otherwise valid judgment against an infant represented by a next friend is not subject to collateral attack solely on the ground that there was a procedural defect in the appointment of the next friend
 
 
 [4]
 The parties agree that Cone Mills would have been subject to service of process in the West Virginia action
 
 
 [5]
 Cone Mills suggests that Susan's claims arising from the burning of the nightgown constitute a single cause of action, and that the filing of the complaint imposed upon Emma a duty to pursue Susan's claims not only against Murphy but against all those who might be liable for her injuries. We disagree. In North Carolina, as elsewhere, product liability claims against a retailer and a manufacturer may be brought either jointly or in separate actions. See Harward v. General Motors Corp., 89 F.Supp. 170 (E.D.N.C.1950); Davis v. Radford, 233 N.C. 283, 63 S.E.2d 822 (1951). Emma confined her complaint to Susan's claim against Murphy, and any duty as guardian Ad litem thereby created was similarly confined
 
 
 [6]
 See n. 2 Supra. On March 19, 1977, Susan reached the age of majority in North Carolina; she therefore now has the capacity to sue on her own behalf
 
 
 [7]
 The statute reads in pertinent part:
 When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury . . .
 (1) It does not discharge any of the other tort-feasors from liability for the injury . . . unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is greater . . . .