As the Legislature designed that guardians (13) should be appointed for idiots and lunatics alone, it is highly necessary that the inquisition, upon the authority of which the county courts exercise the power confided to them, shall distinctly state that the person is an idiot or lunatic, or by an equivalent description present the same meaning. Very mischievous consequences might ensue from a laxity in this respect, since by a jury undertaking to measure the degrees of intellect persons might be subjected to this guardianship whose free agency the law had not restrained, however wise it might be thought on general reasoning to tie up the hands of spendthrifts and drunkards, as is done in some of the States. An inquisition should therefore be regarded as a nullity which barely found that the party was of such weakness of mind as to be incapable of managing his own affairs, for this does not import a total privation of understanding, and consequently (14) does not meet the legal acceptation of lunacy. The objection taken to this inquisition is that it uses the terms "insanemind," and does not find Short to be a lunatic; but I *Page 8 
think those words are of like signification and do substantially conform to the requisites of the act. "Unsound mind," which has the same meaning in the law with insanity, is frequently used in statutes in that sense. LordCoke translates non compotes, "persons of nonsane memory"; and "insanity," both in law and according to the Latin word whence it is derived, imports madness.
It is argued by the appellee that none can traverse the inquisition but those who had an interest at the time it was found; and, in support of this position, the words of the statute, 2 Ed. VI, are cited, and several authorities relied on. In the technical sense of a traverse to an inquest of office, this is certainly correct; for the specific design of passing the statute was for the benefit of such persons as were sometimes deprived of their rights by untrue findings of offices. Persons holding terms for years were often put out of possession by reason of inquisitions, because such terms for years were not found; after which they had no remedy during the king's possession, either by traverse or monstrans de droit, because such interests were not freehold. 4 Reeves's Hist., 462. Those persons only are entitled to traverse the inquisition, which is done by suing out a scire facias
according to the statute. Hence, a person claiming under a deed from a lunatic, after the inquisition, was a stranger, and had no right to a traverse. But the true inquiry here is, in what degree shall an inquisition be considered as evidence against a person claiming from a lunatic who is under guardianship? It is possible that a person may be found a lunatic who is really not so; and very probable that a lunatic may have lucid (15) intervals, in which no one could detect his incompetence. Hence, serious mischiefs might arise to innocent persons if they were concluded by an office. The rule of law, that no one shall be bound by a proceeding to which he was neither party nor privy, ought not to find an exception in a case where the whole proceeding may be consummated without any notoriety beyond the neighborhood in which it is transacted. The case cited from 2 Atk. is an authority to show that such an inquisition is not conclusive; for the Chancellor heard witnesses to disprove the lunacy found by it, and on the strength of their testimony, decreed that a purchase made by the supposed lunatic should stand. This shows that the sense in which he used the word "traversible" was that it might be contradicted by witnesses. In the case Ex parte Barnsley, 3 Atk., 184, the Chancellor says that inquisitions of lunacy are not at all conclusive; for they may bring actions at law, or a bill to set aside conveyances, so that it may be disputed afterwards upon the issue to *Page 9 
be directed. In Collinson on Idiots and Lunatics it is distinctly laid down that an inquisition is only presumptive evidence of insanity, and not conclusive; so that, in an action in respect of any contract or deed, it is for a jury to determine whether, at the time of executing it, the party was non compos, though, by the inquisition, he was found to be non compos at such period. When, therefore, it is said, in Bacon, that if a lunatic contract with another after office found, it is at the peril of him who makes the contract with him, it must be understood in reference to the risk he runs in not being able to disprove the inquisition. In such case he would be concluded, since he would have no right to a traverse, under the statute, being a stranger when the office was found. But if he had contracted with a lunatic, who was not so found by office, the defense could not be set up against him, since no man can stultify himself. The reason of the thing, therefore, coincides with the authorities, and the nonsuit must be set aside and a new trial granted, and the plaintiffs (16) be allowed to offer evidence to verify the replication.