Nash, J.
 

 The bill claims the interference of this Court1 upon two grounds : first, that, at the time of the sale of the negro Milly to the defendant, the plaintiff was a' lunatic ; and secondly,
 
 if not
 
 a lunatic, his mind was so* weak, as to disqualify him from making a valid contract, and that the defendant obtained the conveyance from hirm by the exercise of an undue influence, and an inadequate price.
 

 We are of opinion that the plaintiff1 has failed in establishing either proposition. It is true, a jury of inquest-have, by their verdict, returned to May Term 1845, of Orange County Court, declared that he was at that time, “ incapable of managing his affairs from want of understanding or mental, capacity.” The bill of sale for Milly to the defendant bears date the 8th of April 1844 ; thirteen months before. But the inquest does not say how far back his want of capacity extended, and is confined to. the time at which it speaks. An inquisition of lunacy,.
 
 *447
 
 however, if properly taken is, when offered in evidence, but presumptive proof against persons not parties or privies. The evidence taken in the cause, so far from showing that he was a lunatic, establishes fully that he was not. Although, however, the plaintiff be not a lunatio or insane, yet, if his mind was so weak, that he was unable to guard himself against imposition, or to resist importunity, or the use of undue influence, equity will grant him the relief he seeks, provided it be shown that he has been imposed upon by the use of either of the means enumerated. Mere weakness, however, will not be sufficient. A Court of Equity can not measure the understandings or capacities of individuals. .Where there is a legal capacity, there eannot be an equitable incapacity, apart from fraud. 1
 
 Fonbl. Eq. B.
 
 1,
 
 M. 2, S.
 
 3. If he be of sane mind, he has a right to dispose of his property, and his will stands in place of a reason, provided the contract or act justify the conclusion, that he has exercised a deliberate judgment such as it is, and has not been circumvented, or imposed on by cunning, artifice, or undue influence, means abhorrent to equity, and constituting fraud. Let us bring this case to the test of these principles. The testimony shows that the plaintiff was at a'll times a man of weak mind, but also that he was legally competent to make a contract. Do the circumstances evidence that he was imposed on by the plaintiff, or that he was circumvented by cunning or artifice, or that he was induced to make the contract by any undue influence of the defendant. We think not. The plaintiff had sold the negro girl Milly to a man by the name of Freeland, and he told Thomas Hodge, a witness for the plaintiff, that his reason was, that he was indebted, occasioned by his manager George, one of his negrdes, in clearing too much land, and running too often to the Smith’s shop; that Milly was a mulatto, and that he hated mulattoes, and would sell Milly if he did not get $25 for her ; much or little, he would keep her no longer, she “ should go.” The de
 
 *448
 
 position of John Freeland, to whom Milly had been sold by the plaintiff, was taken by him, and he deposes
 
 to
 
 the same reason, given by the plaintiff for selling Milly. He is asked by the defendant, what was the plaintiff’s reason for selling Milly. He stated, the old man said he wanted money, and he would sell Milly ; she was a mulatto and he despised them in his sight, and he would not gell one of his little blacks.
 

 Henry Stanly, another witness for the plaintiff, is asked on his examination in chief, “ what did Gant tell you was the reason of the plaintiff’s wish to sell Millyhis answer is, he told me Thomas Rippy wished to sell Milly because she was a mulatto; and this was at the time of the sale to Gapt. These witnesses show that the plaintiff was self-moved in his wish to sell the girl; it was his own motion, and upon sufficient ground. He was obliged to pay some of his debts ; he selected the girl in controversy, and gave, as his reason for so doing, what many men of much sounder minds think a sufficient objection to the owning of such property. Did the defendant possess influence with the plaintiff, and did he use it unduly and fraudulently in procuring a sale of the girl ? Henry Stanly is the only witness, who speaks directly to the point. He is asked by the plaintiff, did you think that Thomas Rippy was much under the influence of Cob Gant? His answer is “Yes.” He is asked on his cross-examination by the defendant, in what way was Thomas Rippy under the influence of Gant ? He answered, “ because he was capable of doing business for him a very insufficient reason.
 

 There is no doubt, the defendant had influence, and much influence with the plaintiff. He was his nephew, and a man of business, and did much of his business for him ; but that is not the question. Did ho possess ovcx? the old man an undue influence, and did he make an undue or fraudulent use of it ? The testimony of this witness docs not prove it. Stanly, in answer to, another’
 
 *449
 
 question of the plaintiff, states, that before Gant got Milly into possession, he asked the witness what ho thought she was worth, and he told him $300; when Gant replied, she will not bring that at private sale. Very likely, if she had been offered to the highest bidder, being a likely mulatto, some speculator would have given for her $300. Mr. Hurdle, one of the witnesses, thinks she might have brought that sum at public sale. I see nothing in this testimony to impeach the integrity of the transaction. But it is alleged in the bill, as an evidence of fraud, that Milly was worth much more than Gant gave for her. This certainly is a legitimate ground, upon which to charge fraud, particularly in a transaction such as this; a nephew purchasing from an old and weak-minded uncle. The witnesses for the plaintiff vary in their estimate of the value of Milly at the time of sale. One values her as high as $400, the others from|$300 to $350. The defendant’s witnesses, generally, place her value at $250. Among the plaintiff’s witnesses the only negro trader is Jacob O. Hurdle. He states hex’
 
 then
 
 value to be $400, but at the time Gant purchased her, she was not worth that sum by $150, which would make-it $250, agreeing with the defendant’s witnesses. John Trollinger states that in the latter part of ’43, he purchased negro girls and boys from nine to ten years of age at $200, but that they were worth $225 ; and that in the same year he was called on to value a great many negroes, preparatory to dividing them, among those entitled to them, and that negro girls of ten were valued at $225. We think the weight of testimony is decidedly in favor of $250, as being the value of Milly, at the time of the sale. The defendant, as is proved by the bill of sale, and other testimony, gave for her $215, less by $35, thaix the full value; a difference too small, under the circumstances of the case, to authorise the Court to interfere with the contract on that ground. We cannot say, the plaintiff acted without judgment in the mattei-, for he
 
 *450
 
 gave reasons for selling Milly, which are entirely satisfactory. We cannot say that.the defendant, in purchasing the girl, used any trick or- contrivance, or exerted any undue influence. ■ Much testimony has been taken, and much difference of opinion expressed, as to the ability of the plaintiff to manage his own business or take proper care of his property. All agree, that he is a weak-minded man, and all agree, to whom the question was put, that his property was received by him from his father, and wTas then worth $1000, and that it is now worth $2500, or $2600, and that he has, in the mean time, raised a large family of children and grand-children, upon a small and poor piece of land. He must, through life, have been frugal, careful, and industrious, and most certainly showed, he knew how to take care of, and manage his little property. There is no evidence of any deeay. of intellect, at the time of tbe contract. He seems to have had as much capacity as he ever possessed, tie did, what many a man of far brighter intellect has failed to do, preserve and improve the substance, which a father’s labour had prepared for him.
 

 Per Curiam.
 

 The Bill dismissed with costs.