## In re NELSON.

(District Court, D. Washington, N. D. August 27, 1895.)

1. TERRITORIAL STATUTES — SUSPENSION AND REPEAL BY ACT OF CONGRESS — EFFECT OF ADMISSION OF STATE—INCEST.

   The act of congress of March 3, 1887, for the punishment of bigamy and similar offenses, including incest, in the territories, did not, by implication, repeal the territorial statute of Washington relating to the crime of incest. It merely superseded it until the territory was admitted as a state, whereupon the act of congress ceased to operate, and the territorial statute, by virtue of the state constitution, became the law of the state.

2. INCEST—VALIDITY OF STATUTE.

   The statute of the state of Washington, defining the crime of incest, is not invalid because of the omission of the word "knowingly," or any equivalent expression making knowledge of relationship an element of the crime.

3. HABEAS CORPUS BY FEDERAL COURTS—REVIEWING STATE DECISIONS.

   The writ of habeas corpus cannot properly issue from the federal courts to review alleged errors of state courts in administering the criminal laws of the state. Even if a conviction is unlawful, the accused must apply to the state supreme court; and his alleged poverty, and inability to bear the expense of procuring a hearing therein, is no ground for invoking the power of a federal court.

This was a petition for a writ of habeas corpus.

F. W. Wiestling, for petitioner.
W. W. Wilshire, for respondent.

HANFORD, District Judge. The petitioner, being in the custody of the sheriff of King county, after conviction and sentence in

the superior court of the state of Washington, for said county, of the crime of incest, has applied to this court to be discharged, on the ground that the statute of the territory of Washington under which he was prosecuted, was abrogated by the act of congress of March 3, 1887 (1 Supp. Rev. St., 2d Ed., 568), commonly known as the "Edmunds-Tucker Act," which provided, among other things, for the punishment of bigamy and similar offenses, including the crime of incest, when committed within any of the territories, and, the state of Washington having failed to enact any statute providing for the punishment of such offenses prior to the commission of the crime charged against him, there was no law in force in this state under which he could be punished; and he alleges, therefore, that he is restrained of his liberty without due process of law, contrary to the provisions of the constitution of the United States. The statute of Washington territory upon which the information against the petitioner is founded was enacted long prior to the act of congress referred to, and remained unrepealed by any enactment of the legislative assembly of the territory at the date of the adoption of the constitution of the state of Washington; and there is no ground whatever for assuming that it does not constitute a part of the laws of the territory, continued in force by the provisions of the enabling act under which the territory was admitted into the Union as a state, and by the constitution of the state, other than the allegations of the petitioner that the act of congress covering the same subject had the effect to annul the legislative enactment. The sixth and eleventh sections of the act of congress referred to expressly disapprove and annul certain specified statutes of Utah territory, and other sections place limitations upon the legislative powers of the territorial government of Utah; but otherwise there is in the act no expressed intention to repeal or annul territorial statutes theretofore enacted, nor to restrict the legislatures in the several territories in the exercise of their powers. Conceding that, during the continuance of the territorial government, such offenses could be prosecuted only under the act of congress,—that being a complete law, covering the entire subject, and enacted by the highest authority,—still it did not have the effect to repeal or annul a territorial statute not inconsistent with its provisions. The territorial government was created by congress, and, while it existed, was entirely subordinate to congress. Congress had the power to annul any statute enacted by the legislative assembly, and to make laws and provide for their execution within the territory. The national government was supreme, and the territorial government subordinate thereto. In the exercise of its superior powers, congress enacted the law under consideration, but by its terms it appears to have been intended to supersede, rather than to repeal, the territorial statute; and when the territory of Washington became transformed into the state of Washington the act of congress ceased to have force within its boundaries, and from that time there was no superior law in operation to obstruct proceedings under the local statute. The question

in this case is similar to questions which have arisen as to the effect of repealing the last national bankrupt law, which, while in force, superseded or suspended the insolvent laws existing in most of the states and territories at the time of its passage. "The passage of such law by congress does not repeal state laws, and on repeal of the federal law the state law is revived, and need not be re-enacted." 2 Am. & Eng. Enc. Law, p. 87; Perry v. Langley, Fed. Cas. 11,006; Com. v. O'Hara, 6 Am. Law Reg. (N. S.) 765. In the leading case of Sturges v. Crowninshield, 4 Wheat. 122, Chief Justice Marshall gave a clear expression to this idea, saying a state insolvent law "can only be suspended by the enactment of the general bankrupt law. The repeal of that law cannot, it is true, confer the power on the states, but it removes a disability to its exercise which was created by the act of congress." I have read the able opinion of the supreme court of Wyoming, by Judge Potter, in the case In re Murphy, 40 Pac. 398; and, while not intending to disagree with that court, I prefer to base my decision distinctly on the ground that by the admission of Washington into the Union as a state the act of congress ceased to have force therein, and, when that obstacle to the execution of the territorial statute was removed, it was left in full vigor, and was, by the constitution, adopted as a law of the state.

It has been further argued in behalf of the petitioner that the statute of Washington territory is invalid because of the omission of the word "knowingly," or any equivalent word or phrase to make knowledge of relationship an element of the crime. I find by comparison, however, that the statute of Washington territory is in this respect not unlike other statutes which have been upheld in numerous prosecutions, and there is really no merit in the argument. Bish. Stat. Crimes, §§ 727, 729.

I deem it proper, in conclusion, to say that the writ of habeas corpus cannot properly take the place of a writ of error, or be so used as to enable the federal court to assume the functions of an appellate tribunal to review the decisions of the courts of a state having jurisdiction to hear and determine all questions involved in cases in which persons are accused of violating laws of the state. The petitioner in this case, even if his conviction were unlawful, should have applied to the supreme court of the state to reverse the judgment against him. He has assigned, as one of the reasons for invoking the power of this court, his poverty, and inability to bear the expense incident to a hearing in the supreme court. But it will not do for every poor person who may be convicted of crime to transfer his case into the federal court, and it is unnecessary, for the courts of the state are able to administer justice to the poor as well as the rich; and certainly there is no ground for censuring the supreme court of this state for lack of patience in consideration of cases of poor convicts. It is the judgment of the court that the petitioner be remanded.