[No. 4916.   Decided March 3, 1904.]

| 34 | 221 |
| 35 | 251 |

THE STATE OF WASHINGTON, *Respondent,* v. JOHN GLIN-
DEMANN, *Appellant.*[1]

INCEST—KNOWLEDGE OF RELATIONSHIP—CONSTITUTIONAL LAW—
DUE PROCESS—INFORMATION SUFFICIENT WITHOUT CHARGING SCIEN-
TER.  Bal. Code, §§ 7228, 7229, defining the crime of incest with-
out including actual knowledge on the part of the defendant
of his relationship to the *particeps criminis,* does not violate the

[1]Reported in 75 Pac. 800.

fourteenth amendment as an attempt to deprive one of liberty without due process of law; and an information thereunder is sufficient without alleging *scienter*.

.    INCEST—DEFENSE OF INSANITY—EVIDENCE—RECORD OF GUARDIAN-SHIP—EXCLUSION OF CUMULATIVE TESTIMONY.  Upon the defense of insanity the exclusion of the record of the appointment of a guardian for the defendant as of unsound mind is not prejudicial error, where the record of the actual adjudication of insanity preceding the appointment was admitted, since it could have been no more than cumulative evidence.

SAME—WIFE'S APPOINTMENT AS GUARDIAN—COMPETENCY.  Such record, showing that defendant's wife was still his guardian, is not admissible to show that she, who instigated the prosecution, was in duty bound to look after his defense, since her attitude can be better shown by other evidence.

TRIAL—INSTRUCTIONS—COMMENT ON EVIDENCE.  It is unlawful comment on the evidence and reversible error for the court, upon a dispute as to what a witness had testified to upon a material point in the case, to declare in the presence of the jury what such evidence was, and to state that the stenographer's report thereof is wrong, and no distinction can be made because the remarks were not addressed to the jury.

Appeal from a judgment of the superior court for Spokane county, Richardson, J., entered June 22, 1903, upon a trial and conviction of the crime of incest.  Reversed.

*P. C. Shine* and *Townsend & Moore* (*W. F. Townsend,* of counsel), for appellant.

*Horace Kimball* and *Miles Poindexter,* for respondent, to the point that the remarks of the trial judge were not unlawful comment on the evidence, cited:    *People v. Mayes,* 113 Cal. 618, 45 Pac. 860; *State v. Surry,* 23 Wash. 655, 63 Pac. 557; *State v. Burton,* 27 Wash. 528, 67 Pac. 1097; *People v. Abbott,* 101 Cal. 645, 36 Pac. 129; *Mounts v. Goranson,* 29 Wash. 261, 69 Pac. 740; *McElroy v. Williams,* 14 Wash. 627, 45 Pac. 306; *Price v. Scott,* 13 Wash. 574, 43 Pac. 634; *Drumheller v. American Surety Co.,* 30 Wash. 530, 71 Pac. 25; *Nunn v. Jordan,* 31 Wash. 506, 72 Pac. 124; *Myrberg v. Baltimore etc.*

*Red. Co.,* 25 Wash. 364, 65 Pac. 539; *People v. Benc,* 130
Cal. 333, 62 Pac. 404; *People v. Phelan,* 123 Cal. 551, 56
Pac. 424; *Blue v. McCabe,* 5 Wash. 125, 31 Pac. 431;
*People v. McLean,* 84 Cal. 480, 24 Pac. 32; *Cogdell v.
State* (Tex.), 74 S. W. 311; *State v. May,* 172 Mo. 630,
72 S. W. 918; *Newman v. State* (Tex.), 64 S. W. 258;
*State v. Thompson,* 155 Mo. 300, 55 S. W. 1013; *State v.
Walker,* 50 La. An. 420, 23 South. 967; *Bannen v. State,*
115 Wis. 317,-91 N. W. 107, 965; *Gaines v. State* (Tex.),
47 S. W. 1012; *United States v. Peay,* 5 Utah 263, 14 Pac.
342.

HADLEY, J.—Appellant was charged with the crime, of
incest committed with his own daughter. Having been
tried and convicted, he has appealed to this court. He first
assigns as error that the court overruled his demurrer to
the information. The essential part of the information is
as follows:

"That the said defendant John Glindeman, in the county
of Spokane and state of Washington, on or about the 1st
day of January, 1902, did wilfully, unlawfully and felon-
iously have sexual commerce with and carnally know one
Marie Glindeman, the said Marie Glindeman then and
there being a female and a daughter of said John Glinde-
man, thereby committing the crime of incest."

Incest is defined in §§ 7228, 7229, Bal. Code, as follows:

"Incest is the sexual commerce of persons related within
the degrees wherein marriage is prohibited."

"Persons being within the degrees of consanguinity or
affinity, within which marriages are prohibited by law, who
intermarry with each other, or who commit fornication or
adultery with each other, or who carnally know each other,
shall be deemed guilty of the crime of incest, . . ."

It is urged that actual knowledge, on the part of the
accused, that the relationship is within the said degrees of
consanguinity is necessary in order to constitute the crime.

It is insisted that the criminal intent cannot exist without actual knowledge of the relationship. Appellant contends that the statute defining incest should include the element of knowledge on the part of an accused, and that its failure so to do is in violation of the fourteenth amendment to the constitution of the United States, as an attempt to deprive one of liberty without due process of law. But if the statute itself shall not, for that reason, be held to be violative of the constitutional principle, it is urged that, in any event, the information must go farther than the statute, and include the element of knowledge in its charging part, before it can be held that it charges a crime. Appellant cites *State v. McGilvery,* 20 Wash. 240, 55 Pac. 115, as supporting the view that the information charging one with the crime of incest must charge knowledge of the relationship on the part of the defendant. What is said at page 250 is particularly referred to, as follows:

"The third and last objection to the sufficiency of the information is that it does not allege that Carrie Barnett had knowledge of the relationship existing between herself and the defendant. The information does allege that defendant had knowledge of the relationship and this is sufficient, under our statute, without alleging that the female also had that knowledge."

It is true the inference may be drawn from the above language that the court in that case might have held that the allegation of knowledge was necessary, if it had been omitted as to the defendant. However, the point raised here was really not decided in that case. On this subject the following statement of the rule appears in Vol. 16, Am. & Eng. Enc. Law (2d ed.), 138:

"Where the statutes are silent as to any *scienter,* as where they do not use the words 'knowingly,' 'wilfully,' or the like in describing the offense, it will not be necessary to allege and prove affirmatively that the defendant knew the

relationship existing between him and the *particeps*. While this is true, still it would seem, upon reason, that the defendant's ignorance of such fact would constitute a valid defense."

The crime here is charged substantially in the language of the statute, and is sufficient within the rule above stated. See the following cases in support of the rule, as applied particularly to cases of incest: *State v. Bullinger,* 54 Mo. 142; *Simon v. The State,* 31 Tex. Cr. Rep. 186, 20 S. W. 399, 716; *State v. Wyman,* 59 Vt. 527, 8 Atl. 900, 59 Am. Rep. 753; *State v. Dana,* 59 Vt. 614, 10 Atl. 727.

It was held by the United States district court, district of Washington, in *In re Nelson,* 69 Fed. 712, that a statute of Washington territory, similar to the present state statute, was not invalid because of the omission of the word "knowingly," or any equivalent word or phrase, to make knowledge of the relationship an element of the crime. Under the above authorities, we hold here that the court did not err in overruling the demurrer to the information.

It is next assigned that the court erred in excluding evidence, offered by appellant, that the wife of appellant had been, and then was, the duly appointed, qualified, and acting guardian of appellant. Appellant not only denied the commission of the alleged crime, but also interposed the defense of insanity. A record was introduced to the effect that he was adjudged to be insane by a California court in the year 1898, and also another record showing that he was, in September, 1902, adjudged, by the superior court of Spokane county, to be then insane. Following the last adjudication, the said superior court appointed Anna Glindemann, the wife of appellant, as his guardian, on the ground that appellant was of unsound mind. It was the record of said appointment that appellants sought to introduce in evidence. It is argued that the fact that appellant

was still under guardianship tended to support the presumption of mental disability. We believe, however, that it could have been no more than cumulative evidence in this case, and that it was not reversible error to exclude it. The record of the actual adjudication of his insanity, made just prior to the guardianship proceeding, was in evidence, and the guardianship record was valuable only for the same purpose for which the insanity record was introduced.

It is further urged that the record was competent as bearing upon the contention that appellant's wife is prejudiced against him in this prosecution. It is argued that, whereas it was her duty as guardian to see that appellant was defended in this action, yet she, in fact, was the instigator of the prosecution. We think the real spirit of the wife's attitude toward the husband can be better shown by other evidence than by this offered record. It was therefore not error to exclude it when offered for that purpose.

It is next assigned that the court erred in disputing the statements of counsel and the shorthand report of two stenographers as to what a certain answer of the prosecuting witness had been, in stating what he believed her answer to have been, in striking out the former answer of the witness, and in permitting her to adopt the court's version of what her answer had been, all in the presence of the jury. This assignment we believe involves error. We are compelled to set forth here a portion of this record, which we would fain omit, but we see no other way to make clear the point raised under this assignment of error. The following is the portion of the record to which we refer:

"Q. What did you mean by saying in cross-examination that you supposed the reason you did not become pregnant was because he did not reach your private parts? A. I don't understand. Q. I understood you to say that the reason you did not become pregnant was that your father's private sexual organ did not reach up to your private parts?

The Court: She did not say that. Q. Just explain what do you mean by that? Mr. Townsend: Objected to. Objection sustained. Q. Explain what you meant by the answer that the reason you supposed you did not become with child was that it did not reach up to your privates? A. What he passed away. Q. What he passed away did not reach up to your womb, is that what you mean? Mr. Townsend: Objected to. The Court: She did not say that. I don't think the witness said that. [Here the former question from the cross-examination of this witness and her answer was read by the stenographers for the state and for the defendant, as follows: Q. Why? A. Because it did not come up to my privates.] The Court: The stenographers are wrong. She said the reason was because it did not reach up far enough. Q. I will ask you if that is what you said in answer to that question? A. I think I did. Mr. Poindexter: I move to strike out that former answer. The Court: The motion is granted. Mr. Townsend: Exception."

It seems to us that the above extract from the record is largely self-explanatory. Owing to the peculiar nature of the crime charged, it will be seen that the testimony over which the controversy arose was very important. As counsel for both the state and the defense, as well as both stenographers, seem to have understood it, the argument might well have been made to the jury that actual penetration was wanting, and that the crime of incest was therefore not committed. We think the remarks of the learned judge were direct comments upon material testimony in the presence of the jury. It was for the jury to say what the witness had testified, and it was appellant's constitutional right that the court should not express an opinion before the jury upon evidence of such vital importance to his defense. Moreover, the record discloses that the court's remarks, together with counsel's subsequent question, amounted to suggestions to the witness which she readily followed. The well known tendency of jurors to give much

weight to the court's views of the testimony, if they are able to discover what those views are, we think made the remarks of the court prejudicial to appellant's constitutional rights.

We see no essential distinction between the principle involved here and that which was discussed in *State v. Priest,* 32 Wash. 74, 72 Pac. 1024. Counsel argue that there is a distinction, in that the court's remarks in the above case were directed to the jury, while in the case at bar they were directed to counsel. They were, however, made in the presence and hearing of the jury, and in practical effect this case, we believe, should not be distinguished from the one cited. We think the matters discussed under this assignment were so material that they constitute reversible error.

For the foregoing reasons, the judgment is reversed, and the cause is remanded with instructions to the lower court to grant the motion for a new trial.

MOUNT, ANDERS, and DUNBAR, JJ., concur.