## STATE v. HURLEY DUNCAN.

(Filed 26 June, 1956.)

**1. Homicide § 25—**

The State's evidence tended to show that defendant committed an assault and battery on his victim, that some three days after the assault the victim was taken to the hospital, that he was discharged after some seven days in the hospital, and that, while waiting to leave the hospital, he became ill, and died almost immediately. There was medical expert testimony that the cause of death was an embolism and that the unlawful assault was the cause of the embolism. *Held:* The evidence was sufficient to establish the *corpus delicti* and was sufficient to overcome defendant's motion for nonsuit.

**2. Criminal Law § 5—**

Evidence of defendant's mental condition before and after the commission of the offense, as well as at the time thereof, is competent upon his defense of insanity provided the inquiry bears such relation to his condition at the time the offense was committed as to be worthy of consideration in respect thereto.

**3. Same—**

An adjudication, pursuant to G.S. 122-84, that defendant was without sufficient mental capacity to undertake his defense, entered about a month after the time of the commission of the offense, although not conclusive, is competent in evidence for the consideration of the jury on defendant's defense of insanity.

JOHNSON, J., not sitting.

APPEAL by defendant from *Carr, J.*, October Term 1955 of CHATHAM.

Criminal prosecution on a bill of indictment charging murder in the first degree of J. M. Culbertson.

The jury convicted the defendant of murder in the second degree.

From judgment of imprisonment the defendant appeals, assigning error.

*William B. Rodman, Jr., Attorney General, and Claude L. Love, Assistant Attorney General, for the State.*

*Dixon & Dark for Defendant, Appellant.*

PARKER, J.   On 13 December 1946 J. M. Culbertson, a man 66 years old and in good health and good physical condition, had plowed his horses nearly all day in a field in front of his home and had sown 26 acres of small grain.   In the afternoon he came staggering to his home and fell down.   He got up and went into the house.   He had multiple fractures of the left arm, a broken right arm, cuts on his forehead, scalp and left hand and multiple bruises on his body, chiefly on both arms. The cut on his forehead was a ragged two-inch cut, and there were deep lacerations of the scalp.   Blood was running all over his face.   He was carried to a local doctor that afternoon and the next day, and the day following to Watts Hospital in Durham.

He was admitted to Watts Hospital on 16 December 1946, where he stayed until 23 December 1946.   When he signed out of the hospital, he walked out the front door and sat on the porch to wait for his automobile.   While waiting on the porch he became ill, and was carried immediately into the examining room of the hospital, where he gave a few gasps and died.   An autopsy was performed on his body.   Dr. R. B. Rainey, an orthopedic surgeon at the hospital, attended J. M. Culbertson, while a patient there.   Dr. Rainey, a witness for the State,

testified that, in his opinion, J. M. Culbertson's death was caused by a blood clot in the lung, or embolism, which cut off the blood supply to his lungs, making it impossible for him to breathe. He further testified that he had an opinion satisfactory to himself as to what produced this blood clot, that caused his death: "My opinion is that the inactivity and the injuries in a person of his age were the main factors producing the blood clot. I did not find any other conditions about his body, except the injury just described, which were likely and calculated to produce the blood clot: my opinion is that the formation of the blood clot would have been very unlikely without the injuries."

In the field where J. M. Culbertson was ploughing there were seen the day after he was assaulted tracks of a man who had come into the field and the print of a man's body lying in freshly ploughed ground. The tracks came into the field from the woods and went back to the woods. The tracks were all around the print of the man's body.

In December 1946 the defendant was arrested by T. T. Elkins, a deputy sheriff, shortly after J. M. Culbertson's death. Elkins asked defendant why he whipped Mr. Culbertson. The defendant replied, "Mr. Culbertson kept talking about him, and he wanted to dry him up."

In December 1946, and after 13 December, Raymond Clapp saw the defendant in the yard at the Siler City Mills. He and defendant were friends. He asked the defendant why he beat Mr. Culbertson with a stick, why didn't he take his fists and give him a good whipping and get it over with. The defendant stood and looked at the ground, and then asked Clapp who told him. Clapp replied that J. M. Culbertson's son Wrenn had just told him about it.

A. L. Brooks in December 1946 was jailer of Chatham County. He heard Sheriff Andrews question defendant in jail about the stick he hit Mr. Culbertson with. The defendant replied "the stick will never be found," or "you cannot find the stick." Brooks testified defendant used some of these words, I would not say exactly which ones.

The defendant assigns as error the refusal of the court to allow his motion for judgment of nonsuit. The evidence for the State tends to show that the death of J. M. Culbertson proximately resulted from defendant's unlawful assault upon him, or to phrase it differently that the unlawful assault was the cause of the embolism that caused death. This evidence was ample to establish the *corpus delicti*. As to the cause of death in homicide cases see: *S. v. Minton*, 234 N.C. 716, 68 S.E. 2d 844; 40 C.J.S., Homicide, sec. 11. The evidence offered by the State is of sufficient probative value or force to sustain a conviction, and consequently to overcome the challenge of the motion for nonsuit. *S. v. Stiwinter*, 211 N.C. 278, 189 S.E. 868; *S. v. Holland*, 234 N.C. 354, 67 S.E. 2d 272.

The defendant contends that he did not kill J. M. Culbertson, and also contends that at the time of the alleged offense he was insane, which insanity was caused by active syphilis involving his brain and spinal cord.

The bill of indictment was found by the Grand Jury at the January Term 1947 of the Superior Court of Chatham County. At this same term upon the arraignment of the defendant upon the bill of indictment charging him with first degree murder it was suggested to the court that the defendant is insane and without sufficient mental capacity to undertake his defense or to receive sentence after conviction. The defendant was present in court with his counsel. Whereupon, at this same term of court the trial judge, pursuant to G.S. 122-84, impanelled a jury and had an inquisition in 'regard to defendant's mental condition. The following issue was submitted to the jury: "Is the defendant insane and without sufficient mental capacity to undertake his defense or to receive sentence in this case?" The jury answered the issue Yes. Then the trial judge, pursuant to G.S. 122-83 and G.S. 122-87, ordered that the defendant be committed to the State Hospital at Raleigh, and there be confined, cared for and treated under its rules and regulations, until discharged therefrom according to law, and, if his sanity is restored, he shall be returned to this court for further proceedings under the bill of indictment.

The defendant offered in evidence this adjudication of insanity, which is recorded in "Judgment Docket R, page 235, R-712, State v. Hurley Duncan, which judgment was entered by Judge W. C. Harris at the January Term 1947 of Chatham County Superior Court, and docketed January 14, 1947" in the office of the Clerk of the Superior Court. The State objected to its introduction. The objection was sustained. The defendant excepted to its exclusion, and assigns it as error. The State offered no evidence that the defendant had recovered or had been restored to sanity. G.S. 122-87.

To determine the issue as to whether the defendant was insane at the time of the alleged commission of the offense evidence tending to show the mental condition of the accused both before and after the commission of the act, as well as at the time of the act charged, is competent, provided the inquiry bears such relation to the person's condition of mind at the time of the alleged crime as to be worthy of consideration in respect thereto. It would be impracticable to limit the evidence to such condition at the exact time. *McCully v. State,* 141 Ark. 450, 217 S.W. 453; *Oborn v. State,* 143 Wis. 249, 126 N.W. 737, 31 L.R.A. (NS). 966; 1 McClain on Crim. Law, p. 136; 20 Am. Jur., Evidence, p. 324. In *Bond v. State,* 129 Tenn. 75, 165 S.W. 229, the Court said: "Evidence of his conduct and condition before, at the time of, and subse-

quent to the doing of the thing charged is admissible to enable the jury to arrive at a proper conclusion as to the defendant's mental status at the time he did the thing complained of." In Wigmore on Evidence, 3rd Ed., Vol. II, Sec. 233, it is said: "Courts are today universally agreed that both prior and subsequent mental condition, within some limits, are receivable for consideration; stress being always properly laid on the truth that these conditions are merely evidential towards ascertaining the mental condition at the precise time of the act in issue."

The rule is well established that in criminal cases, when insanity is relied on as a defense, an adjudication declaring the defendant to be an insane person made prior to the alleged offense or subsequent to the alleged offense for which the defendant is being tried is not conclusive of the insanity of the defendant at the time of the inquisition, and is admissible in evidence for the consideration of the jury on the issue as to whether or not he was insane when the offense was committed, provided the time of the adjudication bears such relation to the person's condition of mind at the time of the crime as to be worthy of consideration in respect thereto. *Poole v. State,* 212 Ark. 746, 207 S.W. 2d 725; *McCully v. State, supra; State v. St. Clair* (Missouri Supreme Court—1953), 262 S.W. 2d 25, 40 A.L.R. 2d 903; *Davidson v. Com.,* 171 Ky. 488, 188 S.W. 631; *Smedley v. Com.,* 139 Ky. 767, 127 S.W. 485; *State v. McMurry,* 61 Kan. 87, 58 P. 961; *Wheeler v. The State,* 34 Ohio St. 394, 32 Am. Rep. 372; *Hempton v. State,* 111 Wis. 127, 86 N.W. 596; *People v. Farrell,* 31 Cal. 576; *State v. Glindemann,* 34 Wash. 221, 75 P. 800, 101 Am. St. Rep. 1001; *Bond v. State, supra; Reeves v. State,* (Ala.) 65 So. 160; *Sherrill v. People,* 75 Col. 401, 225 P. 840; 23 C.J.S., Crim. Law, sec. 924; Annos. 7 A.L.R. 568 and 68 A.L.R. 1309; Wharton's Criminal Evidence, 12th Ed., Vol. I, p. 436; 20 Am. Jur., Evidence, p. 324. Here there is no question as to remoteness of the adjudication: on that subject see Annos. 7 A.L.R., pp. 571-573 and 590, and 68 A.L.R., pp. 1311-1312 and 1316.

In Wigmore on Evidence, 3rd Ed., sec. 1671, pp. 678-679, it is said: "There is not, therefore, and never has been, any doubt as to the admissibility of an *inquisition* of lunacy, in any litigation whatever, to prove the person's mental condition at the time; the only controversy has been whether it is conclusive, *i.e.* whether it is to be regarded as a judicial proceeding and a judgment *'in rem,'* binding upon all persons whatsoever. No distinction is made for *criminal* cases, the inquisition being equally admissible to prove the accused's insanity. There also arises for it the question whether the person's mental condition *at the time* of the inquisition is evidence of his condition at the time in issue; that is merely a question of the relevancy of the fact evidenced by the inquisition and not of the admissibility of the inquisition."

In 3 Taylor on Evidence, sec. 1674, it is said: "In general, a judgment *in rem* furnishes *conclusive* proof of the facts adjudicated, as well against *strangers* as against parties; but this rule does not extend either to criminal convictions, which are subject to the same rules of evidence as ordinary judgments *inter partes,* or to inquisitions in lunacy, inquisitions *post mortem,* or other inquisitions, which though regarded as judgments *in rem,* so far as to be admissible in evidence of the facts determined against all mankind, are not considered as conclusive evidence. An inquisition in lunacy, for instance, though admissible against strangers, is not conclusive proof of what was the state of mind of the supposed lunatic at the time of the inquiry."

In *McCully v. State,* (Ark.), *supra,* the defendant was being tried for incest, and offered an adjudication of the probate court committing the defendant to an insane asylum. The original transcript on *McCully v. State* shows (1) that the indictment charged the offense to have been committed on 15 January 1918, and (2) that the defendant was committed to the asylum on 14 July 1918. The trial court refused to admit the probate record in evidence, but the Supreme Court of Arkansas reversed the trial court, and held that the record of commitment to an asylum was admissible on the issue of insanity. What the original transcript shows is set forth in *Poole v. State* (Ark.), *supra.*

This Court in civil cases has recognized the rule that adjudications of insanity are competent in evidence. *Armstrong v. Short,* 8 N.C. 11; *Johnson v. Kincade,* 37 N.C. 470; *Christmas v. Mitchell,* 38 N.C. 535; *Rippy v. Gant,* 39 N.C. 443; *Parker v. Davis,* 53 N.C. 460; *Johnson v. Ins. Co.,* 217 N.C. 139, 7 S.E. 2d 475; *Sutton v. Sutton,* 222 N.C. 274, 22 S.E. 2d 553.

The bill of indictment gives the name of the deceased as J. M. Culbertson. Everywhere else in the record the deceased is referred to as J. T. Culbertson or Tilley Culbertson. His son Wrenn Culbertson testified that his father's name was Tilley Culbertson. It is plain that all these names refer to the same person: the defendant makes no contention to the contrary. If and when this case is tried again, the defendant should be tried upon a bill of indictment that alleges the correct name of the deceased. *S. v. Scott,* 237 N.C. 432, 75 S.E. 2d 154.

The record of his adjudication of insanity at the January Term 1947 of the Superior Court of Chatham County offered by the defendant for the purpose of tending to show that he was insane at the time of the inquisition is admissible in evidence for the consideration of the jury on the issue as to whether or not he was insane when the alleged offense was committed in December 1946. For the prejudicial error of rejecting it, the judgment of the court below is reversed and a new trial ordered.

New Trial.

JOHNSON, J., not sitting.