STATE OF NORTH CAROLINA v. VINCENT KENNETH CAVALLARO.

(Filed 19 June 1968.)

**1. Criminal Law §§ 5, 29—**

Where defendant had previously undergone several weeks of psychiatric evaluation and was found mentally competent to stand trial, it was not an abuse of discretion for the court to refuse to order further psychiatric examination to determine defendant's competency at the time of the alleged offense, there being no statutory requirement that an indigent defendant be given psychiatric examination at his request to determine whether he can enter a plea of insanity.

**2. Criminal Law § 91—**

A motion for a continuance is addressed to the discretion of the trial court, and the granting of a continuance due to the illness of a witness for the State is not an abuse of that discretion.

**3. Same; Constitutional Law § 30—**

Where the State was granted a continuance due to the illness of a witness and the trial was held at the next criminal session of court, the delay did not violate defendant's right to a speedy trial, defendant not having been prejudiced thereby.

**4. Criminal Law §§ 90, 106—**

Introduction by the State of exculpatory statements made by the defendant does not warrant nonsuit when the exculpatory matter is contradicted by other evidence.

**5. Criminal Law § 106—**

Motion to nonsuit should be denied if there is substantial evidence tending to prove each essential element of the offense charged. This rule applies whether the evidence is direct, circumstantial, or a combination of both.

**6. Homicide § 21— Evidence of defendant's guilt of second degree murder held sufficient to go to the jury.**

Evidence of the State tending to show that decedent had been beaten about the head and shot to death, that defendant had been with decedent the evening he disappeared, that on that day decedent had $200 in his possession which was missing when the body was found, that early in the evening of decedent's disappearance defendant, who was unemployed, had no money but later that evening and in the ensuing days paid cash for purchases and living accommodations, that when arrested defendant had a ring which he had pawned to decedent, that the bullet which killed decedent could have come from decedent's pistol which was found in defendant's car with one cartridge fired, that defendant's automobile jack handle was missing, that blood stains of decedent's type but different from that of defendant were found in defendant's automobile, that tire tracks leading to decedent's body were similar to those made by the tires on defendant's automobile, and that an application form which had been given to defendant was found near decedent's body, is held sufficient to be submitted to the jury on the issue of defendant's guilt of second degree murder.

APPEAL by defendant from *Bowman, S.J.,* at the 2 October 1967, Mixed Session, Superior Court of ONSLOW.

Defendant was charged under proper bill of indictment with the murder of Archie Linwood Taylor. Upon the call of the case, the State announced that it would not ask for a verdict of guilty of murder in the first degree but would ask for a verdict of guilty of murder in the second degree or manslaughter or such verdict as the law and the evidence in the case might warrant. The jury returned a verdict of guilty of murder in the second degree. Defendant was sentenced to prison for a term of not less than sixteen nor more than twenty years, and announced in open court that he did not desire to appeal. After having been transferred to State Prison to begin serving his sentence, he changed his mind and wrote a letter to the clerk notifying him of his desire to appeal. Although the letter was dated within the time allowed for appeal, it was not mailed nor received until well after the time expired. Upon motion, the court allowed him to appeal, appointed the same counsel who had, by court appointment, represented him at his trial, and ordered that a transcript of his trial be furnished his counsel.

*T. W. Bruton, Attorney General, by Harry W. McGalliard, Deputy Attorney General, for the State.*

*Ellis, Hooper, Warlick & Waters by Glenn L. Hooper, Jr. and John D. Warlick, Jr., for defendant appellant.*

MORRIS, J. Defendant brings forward eight assignments of error.

The first is to the denial of defendant's petition that he be returned to Cherry Hospital, Goldsboro, N. C., for a determination as to his competency on the date of the alleged offense. Defendant was arrested in Miami, Florida, on 27 February 1967. He waived extradition and was returned to Onslow County on 10 or 11 March 1967. On 7 April 1967 his court-appointed counsel moved for "psychiatric and neurological examination and evaluation prior to his trial and that he be admitted to a hospital for these purposes." On the same day, an order was entered by Clark, J., directing that defendant be admitted to Cherry Hospital for a period not exceeding 60 days. He was admitted on 8 April 1967 and a detailed report dated 25 May 1967 was made which covered a thorough study of defendant and an exhaustive history of defendant's illnesses, mental and physical, from childhood. The finding was that he was able to plead to the bill of indictment, knew the difference between right and wrong, was aware of the offense with which he was charged, and was able to consult with counsel in the preparation of his defense.

The diagnosis was that he was without psychosis. Defendant, on 12 June 1967 petitioned that he be returned to Cherry Hospital for a determination of his "competency on the date of the alleged offense, January 30, 1967". The denial of this petition, defendant says, constitutes prejudicial error. There is no statutory requirement that an indigent defendant be given psychiatric examination at his request to determine whether he can enter a plea of insanity. This defendant had been given several weeks psychiatric hospitalization at his request. The court in its order denying the request stated that counsel for defendant could pursue any remedies as to the competency of defendant on the date of the alleged offense at the time of the trial of the case. Although many witnesses testified they knew the defendant, he introduced no evidence as to his mental competence or incompetence at the time of the offense, nor did any of the doctors at Cherry Hospital testify for him. We find no abuse of discretion and overrule assignment of error No. 1.

Assignment of error No. 2 is to the court's allowing the State's motion to continue the case on 18 June 1967, and, by assignment No. 3, defendant says that the denial of his motion to dismiss for lack of a speedy trial was error. The defendant was arrested in February, returned to North Carolina in March, admitted to Cherry Hospital where he remained several weeks. The case was calendared for trial at the July 1967 Session. The State asked for a continuance because a State's witness — one of the S.B.I. agents — was confined to his home because of illness. The motion was granted, and the case was tried at the next session at which criminal cases could be tried — October 1967. The granting of the motion to continue was in the discretion of the trial judge, *State v. Allen*, 222 N.C. 145, 22 S.E. 2d 233, and no abuse of discretion is shown. Defendant's contention that his constitutional rights were violated in that the State failed to give him a speedy trial is untenable. The only delay in getting to his trial caused by the State was the continuance for one session of court due to the illness of a witness for the State. There is nothing in the record to indicate that this defendant was not brought to trial in as orderly and speedy a manner as possible. There is nothing in the record to indicate that he ever requested that he be allowed bond. There is nothing in the record to indicate nor does he suggest that because of any delay he lost the benefit of the testimony of any witnesses. Assignments of error Nos. 2 and 3 are overruled.

Defendant next contends that his motion for nonsuit should have been allowed and the failure of the court to so do is assigned as error (Assignment of error No. 4) for that the State offered exculpatory statements of defendant, and the evidence was insufficient.

Defendant had told officers that he knew nothing of the murder of deceased; that he loaned the deceased his car; that he thumbed a ride to a nearby motel and then thumbed back to town to pick up his car, and went to Florida to look for a job; that he subsequently found the pistol in his car. The defendant contends these are exculpatory statements of defendant offered by the State upon which the State must rely and which entitle him to nonsuit. If the exculpatory statements of defendant were offered by the State without contradictory evidence, defendant's contention would have merit. *State v. Johnson,* 261 N.C. 727, 136 S.E. 2d 84. However, in addition to other contradictory evidence of the State, defendant himself at one time stated that he picked up his car later in the night and at another that he picked it up the next morning. There was evidence that he registered his car at the motel and drove up in it; that there was no car of any kind in the parking lot at the time he said he picked it up. Where the exculpatory matter is contradicted by other evidence, nonsuit is properly denied. *State v. Wilson,* 264 N.C. 373, 141 S.E. 2d 801. Defendant introduced no evidence. The evidence presented by the State was circumstantial.

The rule with respect to the sufficiency of circumstantial evidence to carry the case to the jury is set out in *State v. Burton,* 272 N.C. 687, 689, 158 S.E. 2d 883, where the Court quoted with approval the statement of Higgins, J., in *State v. Stephens,* 244 N.C. 380, 93 S.E. 2d 431:

> " '. . . If there be any evidence tending to prove the fact in issue or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture in regard to it, the case should be submitted to the jury.' The above is another way of saying there must be substantial evidence of all material elements of the offense to withstand the motion to dismiss. It is immaterial whether the substantial evidence is circumstantial or direct, or both. To hold that the court must grant a motion to dismiss unless, in the opinion of the court, the evidence excludes every reasonable hypothesis of innocence would in effect constitute the presiding judge the trier of the facts. Substantial evidence of guilt is required before the court can send the case to the jury. Proof of guilt beyond a reasonable doubt is required before the jury can convict. What is substantial evidence is a question of law for the court. What that evidence proves or fails to prove is a question of fact for the jury. *S. v. Simpson, ante,* 325; *S. v. Duncan, ante,* 374; *S. v. Simmons, supra; S. v. Grainger,* 238 N.C. 739, 78 S.E. 2d 769; *S. v. Fulk,* 232 N.C. 118, 59 S.E. 2d

617; *S. v. Frye,* 229 N.C. 581, 50 S.E. 2d 895; *S. v. Strickland,* 229 N.C. 201, 49 S.E. 2d 469; *S. v. Minton,* 228 N.C. 518, 46 S.E. 2d 296; *S. v. Coffey,* 228 N.C. 119, 44 S.E. 2d 886; *S. v. Harvey,* 228 N.C. 62, 44 S.E. 2d 472; *S. v. Ewing,* 227 N.C. 535, 42 S.E. 2d 676; *S. v. Stiwinter,* 211 N.C. 278, 189 S.E. 868; *S. v. Johnson, supra.*"

The evidence for the State tends to show that the deceased was last seen on 30 January going to the trailer where he lived. On 2 February his body was found back of a nearby cemetery. He had been dead more than 48 hours and had been brutally beaten about the head before he was shot. His clothing was blood soaked. The cause of death was a bullet fired from a pistol. A few coins were found on the body but no billfold. Near the body was a blank application form. There were tire tracks leading to the body. Deceased often carried large sums of money and on the day last seen had around $200.00 in his possession. Defendant was, by his own statement, with deceased around 8:30 or 9 o'clock on the night of 30 January. Deceased had never been seen driving a car by those who knew him although he worked at a service station during the day and attended a parking lot at night. He had no driver's license. The defendant owned a 1959 black Cadillac and was friendly with deceased. He had been seen at the service station where deceased worked at about 5 o'clock p.m. on 30 January while deceased was there. About 5:30 he attempted to pawn a watch to deceased, was refused and pawned it to the service station operator for $1.00 worth of gas and $2.00 in cash. He had previously pawned a ring to deceased. He was unemployed. A car was seen leaving Archie Taylor's trailer about the time defendant said he was with Taylor. About 9:00 p.m., 30 January, defendant drove his car to the service station where he had pawned the watch, coming from the direction of the cemetery. He had money and used a $20 bill to buy a tank full of gas and received the change therefrom. He registered at a nearby motel for the night, registered his car, paid in cash and left for Florida the next morning, paying cash for his motel and YMCA accommodations on the way and after arriving in Florida. When arrested in Florida, he had the ring he had pawned to decedent. Decedent's pistol was found in his car from which one cartridge had been fired. The bullet which killed decedent could have come from this pistol. The car jack handle was missing, though other parts of the jack were in the trunk of defendant's car. A part of the car seat and a part of the seat liner were blood soaked. This blood was type A as was the blood on decedent's clothing. Decedent had type A blood. Defendant had type O blood. The tire tracks at the scene

where the body was found were like those made by the tires on defendant's car. The application form found near the decedent's body was from a local bread company. Defendant had been given such a form by a company employee only a few days before 30 January. This was the only such form which had not been returned to the company of those given to applicants for a job.

The chain of circumstantial evidence in this case raises more than a suspicion or conjecture. It is clearly sufficient to establish that defendant was the perpetrator of the crime. Assignment of error No. 4 is overruled.

The remainder of defendant's assignments of error are to the charge of the court. We have carefully examined the judge's charge, and construing it as a whole, we find no prejudicial error.

Affirmed.

MALLARD, C.J., and BRITT, J., concur.