# COURT OF APPEALS

OF

# NORTH CAROLINA

AT

# RALEIGH

---

STATE OF NORTH CAROLINA v. JOHN BULLOCK, JR.

No. 7514SC558

(Filed 17 December 1975)

1. Criminal Law §§ 5, 29— motion for second psychiatric examination —
denial proper

   Defendant was not denied his constitutional rights by the trial
   court's denial of his motion for a second psychiatric examination after
   the first examination revealed that he was competent to stand trial.

2. Criminal Law §§ 40, 63— prior criminal trial — not guilty by reason
of insanity — evidence properly excluded in subsequent trial

   In a prosecution for assault with a deadly weapon with intent to
   kill where defendant's sanity was at issue, the trial court did not err
   in excluding evidence that defendant, in an earlier prosecution for
   another different criminal assault with a deadly weapon charge, had
   been acquitted by reason of insanity.

APPEAL by defendant from *McLelland, Judge.* Judgment
entered 3 April 1975 in Superior Court, DURHAM County. Heard
in the Court of Appeals 16 October 1975.

Defendant was charged on 6 January 1975 with felonious
assault with a deadly weapon with the intent to kill, inflicting
serious injury. Pursuant to defendant's own motion, the trial
court on 13 February 1975 committed defendant to a State
psychiatric hospital for a professional determination of his
competency to stand trial. On 13 March 1975, Dr. Bob Rollins,

1

Psychiatrist and Director of Forensic Services at Dorothea Dix Hospital, reported to the trial court that the defendant was competent to stand trial notwithstanding a tentative finding of "[l]atent schizophrenic reaction." Dr. Rollins further noted that defendant was paranoid, misinterpreted reality and tended ". . . to defend himself with excessive . . . force whenever he feels threatened."

Defendant's attorney, unsatisfied with Dr. Rollins's conclusions, moved in April 1975 for a second psychiatric examination and reminded the trial court that his client " . . . has been in and out of mental hospitals at least four times. Last summer, less than a year ago, he was acquitted by a jury in this very court of an identical charge to that which he is facing today by reason of insanity." Dr. Rollins, further explaining his report, testified on voir dire that defendant ". . . presents himself as hostile and uncooperative, but . . . he chooses to be that way. . . . [H]e could cooperate with his lawyer if he wanted to and . . . his failure to do so was not the result of mental illness to the point that he did not know what was going on or appreciate the issues involved." As far as Dr. Rollins could perceive, the defendant, though difficult and obstinate, ". . . was in touch with what was going on." In view of this information, the trial court denied defendant's motion for a second psychiatric examination and declared defendant competent to stand trial.

At trial, the State's evidence tended to show that on 24 December 1974 defendant entered Jimmy Koutsis's City Sandwich Shop to beg for money. Owner Koutsis testified that he had ". . . warned him before about begging. I got up in a nice way and told him that I had warned him in the past about begging. I told him I didn't want him coming back any more. He said O.K., and walked to the door and just stood there with his back to the outside and his hand in his pocket. I went to the door and told him again that I wanted him to stay out of the business. He said O.K. again and looked like he was going out the door. I then heard Sheriff Davis [, who was in the restaurant at the time,] say, 'Jimmy, watch,' and when I turned around and looked I saw a [switchblade] knife coming at me. I jumped over and he hit me on the hand with the knife. . . . When I jumped, I hit the steam table at the same time the knife hit me. I grabbed a chair and hit him and tried to push him out the door. He was gesturing at everybody with the knife. Two

policemen then came and took him to the courthouse. My wrist had been cut and required twelve stitches." On cross-examination, Koutsis amplified on the extent of his injuries and stated that "[i]t took three or four weeks to get the stitches out. I was in the hospital all of Christmas Eve, but just to get the stitches. I was not admitted, I was in the emergency room only. I saw the doctor two times, when the stitches went in and when they came out. I still feel pain any time the weather is cold."

Durham Sheriff Marvin L. Davis essentially corroborated Koutsis's testimony; though Davis actually never saw the specific blow which wounded Koutsis.

Defendant testified that he struck Koutsis in self-defense and ". . . nick[ed] him in the arm so he would put the chair down." Dr. Rollins, called as a defense witness, testified that defendant ". . . was sufficiently in control of himself to be held accountable and responsible for his actions." On cross-examination, Dr. Rollins further stated that:

"In my opinion Mr. Bullock was legally responsible for his actions at the time of the alleged crime. In my view, he had a clear understanding of what was going on. I believe he was aware that there were consequences for attacking and hurting other people. He pictured the situation as one in which he was defending himself. In my opinion he was generally aware that people could be punished for doing actions such as that. I would describe that also as knowing the difference between right and wrong. I also believe that John Bullock would have the ability to form the intent to kill at the time of the alleged event."

From a plea of not guilty, the jury returned a verdict of guilty of assault with a deadly weapon inflicting serious injury. From judgment sentencing him to a term of imprisonment, defendant appeals.

*Attorney General Edmisten, by Assistant Attorney General Parks H. Icenhour, for the State.*

*Loflin & Loflin, by Thomas F. Loflin III, for defendant appellant.*

MORRIS, Judge.

[1] Defendant first contends that the trial court erred in denying his motion for a second psychiatric examination. Defendant

maintains that such a denial deprived him of his fifth, sixth and fourteenth constitutional amendment rights. We find no merit in this contention. A criminal defendant is entitled to a fair trial with the assistance of counsel. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed. 2d 799 (1963). Without question, this principle implies that the defendant ". . . is capable of understanding the nature and object of the proceedings against him and to conduct his defense in a rational manner. . . ." *State v. Jones,* 278 N.C. 259, 266, 179 S.E. 2d 433 (1971). Unless the defendant is competent mentally at the time of trial the State cannot force the accused to enter a plea and to defend himself from prosecution. This ". . . rule is for the protection of the accused, rather than that of the public, though it applies even to a defendant who demands trial. The rule has been explained on the ground that the accused is disabled by act of God from making whatever defense he may have." 21 Am. Jur. 2d, Criminal Law, § 62, pp. 143-144.

Once the question of competency has been raised, whether by the defendant, State, or court, "[t]he manner and form of an inquiry to determine whether a person accused of [a] crime has the mental capacity to plead to the indictment and prepare a rational defense is for the determination of the trial court in the exercise of its discretion. . . ." 2 Strong, N. C. Index 2d, Criminal Law, § 29, p. 526. Furthermore, ". . . such action is . . . not reviewable unless [such] discretion is abused by being exercised arbitrarily." 21 Am. Jur. 2d, Criminal Law, § 66, p. 149. Moreover, a defendant, though entitled to a fair trial while mentally competent, is not entitled to a *second* psychiatric examination to determine his competency as a matter of right. *State v. Cavallaro,* 1 N.C. App. 412, 414, 161 S.E. 2d 776 (1968) ; affirmed 274 N.C. 480, 164 S.E. 2d 168 (1968).

[2] Defendant also contends that the trial court erred in excluding evidence that defendant, in an earlier prosecution for another different criminal assault with a deadly weapon charge, had been acquitted by reason of insanity. Defendant thus argues that under *State v. Duncan,* 244 N.C. 374, 93 S.E. 2d 421 (1956), a prior adjudication of his insanity was admissible in this particular subsequent prosecution. In *Duncan,* the defendant was charged with murder and raised the defense of his insanity. During the same term in which the bill of indictment was returned and only a short time after the alleged commission of the crime, the trial judge impanelled a jury to determine

defendant's competency. This jury determined that defendant was ". . . insane and without sufficient mental capacity to undertake his defense or to receive judgment in this case . . .", and the defendant was committed to a State psychiatric hospital. *Id.* at 377. When subsequently tried under the murder charge, the defendant unsuccessfully tried to introduce into evidence that ". . . adjudication of insanity. . . ." In view of the exclusion of that evidence, the State Supreme Court ordered a new trial, holding that "[t]he record of his adjudication of insanity at the January Term 1947 of the Superior Court of Chatham County offered by the defendant for the purpose of tending to show that he was insane at the time of the inquisition is admissible in evidence for the consideration of the jury on the issue as to whether or not he was insane when the alleged offense was committed in December 1946." *Id.* at 379. The Court further opined that such evidence is admissible ". . . provided the inquiry bears such relation to the person's condition of mind at the time of the alleged crime as to be worthy of consideration in respect thereto." *Id.* at 377.

Here, unlike the situation in *Duncan,* where the adjudication of "insanity" and incompetence arose only a month after the alleged offense had occurred, this defendant seeks to introduce evidence with respect to his competency in a completely different cause of action pursued under a different circumstance many months prior to this present adjudication, to substantiate some current claim of insanity. This particular question of insanity turns on this jury's determination of the defendant's mental state at the time of this particular crime charged. What his mental state happened to be when he allegedly committed an earlier different offense is simply not relevant and too remote to this prosecution and hence fails to bear "such relation to the person's condition of mind at the time of the alleged crime as to be worthy of consideration in respect thereto." *Id.* at 377. " 'Courts are today universally agreed that both prior and subsequent mental condition, within some *limits,* are receivable for consideration. . . .' " (Emphasis supplied.) (Citation omitted.) *Id.* at 378. Here, however, the particular attempt to reach back to a previous jury's finding of insanity is simply beyond those reasonable limits which govern judicial determination of reasonableness and relevancy. Unlike the situation presented in *Duncan,* there is a significant question ". . . as to remoteness of the [prior] adjudication . . .", and such remote-

ness distinguishes this case from the fact situation presented in *Duncan. Id.* at 378.

Essentially, the problem is one of relevancy versus prejudice. Often evidence, notwithstanding some relevant link to the issues involved in the particular case, should be excluded because the prejudicial effect outweighs the probative value. Thus, "[e]ven relevant evidence may . . . be subject to exclusion where its probative force is comparatively weak and the likelihood of its playing upon the passions and prejudices of the jury is great. This is not a general rule of exclusion, but it . . . is a factor to be considered, along with those of unfair surprise and confusion of issues, in determining whether a particular item of evidence should be rejected on the ground of remoteness." 1 Stansbury, N. C. Evidence, § 80, pp. 243-244 (Brandis Rev. 1973). The obvious danger in admitting this particular evidence is that the jury may ignore the court's instructions as to the law of insanity and reach back to the prior verdict of not guilty by reason of insanity to resolve the difficult issue of insanity in this current prosecution. Moreover, even a ". . . limiting instruction may be insufficient to overcome the highly prejudicial likelihood that the jury will give the evidence controlling or at least significant weight in resolving the issue as to which it is incompetent; and in such cases the evidence should be excluded." 1 Stansbury, N. C. Evidence, § 79, p. 241 (Brandis Rev. 1973). Therefore, we hold this case is distinguishable from *Duncan* and overrule defendant's contention.

Defendant's other assignments of error go to various aspects of the court's charge to the jury. A contextual reading of the instructions, however, indicates no error prejudicial to the defendant.

No error.

Judges PARKER and MARTIN concur.